## ELISE DELAMOUR v. AUGUSTI V. ROGER.

The circumstance that the plaintiff is a concubine of her copartner, does not deprive her of an action for the settlement of its affairs and a participation in profits, derived by capital and labor, which she contributed.

APPEAL from the Third District Court of New Orleans, *Kennedy*, J. *Miles Taylor*, for plaintiff: First. Partnership is a contract made between two or more persons, to place their money, effects, labor, and skill, or some, or all of them, in lawful commerce or business, with the understanding that there shall be a communion of the profits thereof between them. Story on Partnership, No. 2. Civil Code, 2772. *Purdy*

DELAMOUR<br>v.<br>ROGER.

*v. Flood*, 5 N. S. 629, 630. It may be made between all persons capable of contracting. C. C. 2773. We have no knowledge of any law or principle of law, by which a single woman is rendered incapable of becoming a party to such a contract. Married women are, in general, incompetent to become so, but the rule with respect to them is subject to many exceptions. In all the instances in which this is permitted, it is stated that they are authorized to do so as " *a feme sole*," to use the language of the common law. Story on Partnership, Nos. 10 to 14, C. C. 1779.

The business which was carried on was lawful and proper. A partnership formed with a view to its prosecution between two men would be perfectly legal, and it is not easy to conceive why it should be any the less so because one of the parties was a female.

Second. The plaintiff is the joint and equal owner, with the defendant, of all the real estate and slaves, and stock in trade acquired and held in his name, and of the debts due to him. C. C. 2779, 2782, 2824, 2825. C. C. 2836. *Richardson* v. *Packwood*, 1 N. S. 290. 4 *Skilman* v. *Purnell*, 3 L. R. 497.

There may be two or more different contracts between the same parties, and one may be valid whilst the others are null and could give no rights. Now, the defendant says that the plaintiff lived with him in a state of concubinage, and that there was no other cause or motive for their apparent connection. We have shown that there was another cause for that connection, and that it was of a nature that continued to operate upon and influence the parties in such a manner that all their exertions and industry were directed to a common object, that of making the business they were associated in profitable, not only whilst they were separated and lived apart for a year or more in 1831 and 1832, and for about six months in 1836, but during the whole period which elapsed from the time the defendant left the plaintiff in France, in 1844, and when they not only lived apart, but the defendant lived and cohabited with other females. No matter how improper the cohabitation of the plaintiff with the defendant might have been, it could not, under any circumstances, have any effect upon a separate and distinct agreement of the kind we have shown, with respect to the prosecution of a lawful business, to the establishment and prosecution of which the plaintiff contributed all the pecuniary capital, and furnished at least an equal proportion of the industry, care, attention and economy necessary for its success.

All the circumstances of the case show the entire validity of the association of the parties in the establishment, and prosecution of a common business. If, however, this admitted of doubt, in the absence of proof to the contrary, " illegality in a transaction is never presumed; on the contrary, every thing is presumed to have been legally done, until the contrary is shown." 1 Chitty on Pleading, 220. And it is a well founded principle of law, that when an act may have been determined by two motives, one praiseworthy, and the other illicit, it must be considered to have been determined by the praiseworthy one. 2 Delvincourt, p. 203, No. 3. Paillet note g, 1 to art. 1108 of the Napoleon Code. 3d Ann. 239, 157, 494.

But in the present instance there is no room for doubt. The facts show clearly that the association in business had a lawful purpose.

The defendant's counsel seem to have confounded this action with another that it has no relation to. He would have it considered as if it were an action to enforce the payment of an obligation, given in consideration of the illicit cohabitation of the parties. But every obligation, founded upon such a cause, is not void. One given in consideration of future illicit intercourse is certainly so. But past cohabitation has been held to be an innocent consideration in England, and where the common law prevails. Chitty on Contracts, ed. 1842, p. 660, 1. The same doctrine is maintained in France. Repertoire du Journal du Palais, vol. 9, p. 743. It is true that in many cases our courts have refused to enforce notes and other obligations given by men to females, who had lived with them in a state of concubinage, but in every instance it has been upon the ground that there was a want of consideration. We know of no principle which would prevent one who had lived in concubinage with another, from recovering against him upon a cause of action founded on an actual consideraton furnished by her to him. In the only cases which has occurred in our courts, that of *Vienne* v. *Brickle*, 8 M. R. 11; and of *Labanelle* v. *Decorret*, 2d Ann. 546, the right was recognized and enfored.

DELAMOUR
*v.*
ROGER.

*Graihle* and *Randel Hunt*, for defendant: The allegations of plaintiff show evidently, that the motive or cause of their co-residence was the concubinage. If the court are of opinion that such was the motive, consideration, or object of the parties, when they first met together, then the peremptory exception filed must be sustained, and there must be judgment for the defendant. L. C. 1887, 1889, 1890, 2026.

An obligation without a cause, or with a false or unlawful cause, can have no effect. C. C. art. 1887.

By the cause of the contract, in this section, is meant the consideration or motive for making it, &c. C. C. 1890. 17 L. R. 126. 3 N. S. 46. 1st Ann. 69. Duranton, vol. 10, No. 367.

The judgment of the lower court recognizes a universal partnership between the parties. We maintain there was an insuperable obstacle to the formation of such a partnership between these parties. C. C. art. 2805 provides that: " a universal partnership cannot be created without writing signed by the par. ties, and registered in the manner hereinafter prescribed." C. C. art. 2817, 2818, 2819.

C. C. art. 2804 provides as follows: " Universal partnership shall only be contracted between persons who are not respectively incapacitated by law from conveying to, or from receiving from, each other to the injury of others."

C. C. art. 1468 is in the following words: " Those who have lived together in open concubinage are respectively incapable of making to each other, whether *inter vivos* or *mortis causa,* any donation of immovables; and if they make a donation of movables it cannot exceed one-tenth part of the whole value of their estate. Those who afterwards marry are excepted from this rule."

The spirit of that law is of public order, and to laws of that kind, parties cannot derogate. Every thing done in contravention to a prohibitory law produces no effect, and is absolutely null. C. C. art. 12.

In a case like the present, parties must be left in the condition in which they place themselves: " Melior est conditio possidentis," or " Porro autem si et dantis et accipientis turpis causa sit; possessorum potiorum esse, et ideo repetitionem cessare, tam et si ex stipulatione solutum est." Leg. 8, § de conditione ob turpem, 12, 5.

If the judgment of the lower court was confirmed it would be the corner stone of a new jurisprudence in favor of concubinage; a premium to the concubine over the legitimate wife. 1. In marriage, the husband is the head and chief of the community property, which he can alienate at pleasure. 2. The wife has no right of action, against her husband, for the purpose of dividing the community property, except in cases of separation of bed and board or of divorce. 3. The legal community is to last as long as the marriage, unless the husband mismanages the wife's private property. 4. During marriage, the wife could not form a commercial partnership with her husband. 2 L. R. 268. 5. Could she do it with her husband and concubine jointly?

By the court:

PRESTON, J. The evidence leaves no doubt of the conclusions to which the district court arrived in this case. 1st. That if the parties had been both men or both women, it would have fully established a partnership between them. 2d. That upwards of twenty years ago, in Paris, the plaintiff furnished the little capital with which they began business. 3d. That the plaintiff had contributed equally with the defendant, by her skill and application, to the success of their business. 4th. That the real property in this city standing in the name of the defendant, was purchased with the profits of their business as hair dressers and keepers of a perfumery and fancy store.

The defendant relies on the fact that they lived together during the period the property was accumulating in a state of concubinage, and contends that on that account, the laws give to the plaintiff no action to recover half of the property.

The evidence perhaps justifies the remark of the judge, that the concubinage which was at two periods interrupted a long time by the business, was rather an incident to the business than the reverse.

Be that as it may, there is a manifest difference between an action for the wages or reward promised in consideration of concubinage, which cannot be maintained; and a suit for property, the result of capital, industry, labor and economy. The evidence gives this character to the present suit, although the life and conduct of the parties was contaminated by an immoral connexion, the continuance of which was attributable more to the defendant than to the plaintiff.

The case in many respects, is remarkably similar to that of *Vienne* v. *Bickle*, 8 M. R. 11. We will not say, with the Supreme Court in that case, that the cohabitation increases the obligation of the defendant, in a moral point of view, of doing justice to the plaintiff, but we have no hesitation in saying, it does not lessen his legal obligation to do so.

The reasonable effect of article 2804 of the Civil Code, is to render the participator in concubinage incapable of recovering, as a universal partner, one half of the property acquired, although her labor may have contributed nothing towards its accumulation; but, when her capital and labor has contributed a full share towards the result, equity entitles her to half the property acquired.

In addition to this, the defendant, in his numerons letters to the plaintiff, speaks not only of " our commercial house," but of "our houses," "our property" and "our rents," which he anticipates will be sufficient to support them comfortably in retirement in their old age. Some of these letters are sufficiently particular in description, to establish a legal title to certain properties and slaves as between the parties, and even as to third persons, if they had been recorded, and the knowledge that the parties were not man and wife, had been made public.

The possession of the defendant cannot prevail against the frequent and long continued acknowledgment of joint ownership, based upon so much equity. It amounts to a legal title to half the property, supported by an equitable ownership, and no principle of law or morality requires us to reverse the judgment of the district court.

There was an error (we supposed clerical) in the judgment, in decreeing the whole property to the plaintiff. We have left the case open for the correction of this matter. But as it has not been done, we are obliged to reverse the judgment, at the costs of the plaintiff.

It is decreed, that the judgment of the district court be reversed; and it is further decreed, that the plaintiff recover from the defendant one undivided half of the property described in the judgment of the district court, and that the judgment, in all other respects, be affirmed; and that the plantiff be condemned to pay the costs of this appeal.