174 So.2d 915 (1965)
Mrs. Junie FOSHEE, Plaintiff-Appellee,
v.
Leo SIMKIN, Defendant-Appellant.
No. 6361.
Court of Appeal of Louisiana, First Circuit.
April 12, 1965.
Rehearing Denied May 24, 1965.
*916 David H. Seelig, of Irwin, Seelig & Nelkin, New Orleans, for appellant.
Barranger, Barranger & Jones, Covington, for appellee.
Before ELLIS, LOTTINGER, LANDRY, REID and BAILES, JJ.
BAILES, Judge.
This is a suit for a separation from bed and board between the parties. Judgment was rendered by the trial court in favor of plaintiff-appellee, Mrs. Junie Foshee, granting the separation and also dissolving the community of acquets and gains theretofore existing between them. The trial court also held that certain property acquired before the marriage, between the parties, to belong to a partnership which he found to have existed between plaintiff and defendant, prior to marriage. Defendant-appellant, Leo Simkin, appeals from that portion of the judgment declaring four certain pieces of property acquired prior to July 19, 1948, the date of the marriage between the parties, to be partnership property and which recognized plaintiff's one-half undivided interest in said properties. There is no contest here involving the granting of the separation from bed and board, or the community status of the property acquired after marriage.
Sometime during the decade between 1930 and 1940, the plaintiff and defendant commenced living together in a relationship of man and wife for the purpose of concubinage. During this time, the defendant was married to a woman named Madge Shaeffer from whom he was divorced on June 6, 1947. On July 19, 1948, the plaintiff and defendant were married.
Between September 8, 1941, and the date of their marriage, these parties continued to live together in open concubinage. Sometime in 1940, the defendant bought a restaurant on Tchoupitoulas Street in the city of New Orleans. Admittedly, the plaintiff worked in this restaurant for and with the defendant. Their testimony is in agreement that they divided the responsibilities of the business, with plaintiff being in charge of the kitchen and dining room, and the defendant taking care of the bar and being cashier. The plaintiff contends that she and the defendant entered this business through their joint efforts and that the finances were obtained through a loan on an automobile and from certain of the defendant's relatives. Throughout her testimony, plaintiff speaks of "we" and "us" and "our", however, it must be noted that there is no testimony or other evidence that a partnership was expressly agreed upon or entered into between her and the defendant. The plaintiff testified expressly one time in her testimony that "* * * it was a partnership and a joint affair that we had. There was no salaries issued." The defendant admits in his testimony that plaintiff worked in this restaurant business and that she *917 obtained from the business anything she wanted as well as having charge accounts at many places in New Orleans. Admittedly, all expenses of the parties' living together were paid for from the earnings of the business.
The record reflects the following statement by the trial judge in his oral reasons for judgment:
"* * * And the big question is whether she was just a concubine living there for her keep and what she got out of it was the loving and attention that he'd give her and the romantic life that he was able to provide plus her keep and maintainance (sic) and her charge accounts in the stores. And the other side of that is was this in the nature of a partnership. The property being bought being placed in her name. I think enough of this to hold that it was partnership property and there ought to be some accounting for it. * * *."
On September 8, 1941, the property in question which we shall call the Tchopitoulas Street property was acquired in the name of plaintiff, Junie Foshee. On the same day of the purchase of this property, Junie Foshee executed a counter letter containing the following statement:
"Now, I do hereby declare and acknowledge that in truth and in fact the title to the said property was placed in my name for convenience only, the said property having been purchased by..... LEO SIMKIN, and that the same was placed in my name for account of the said Leo Simkin, and that I, personally, have no interest therein.
"I, therefore, hereby declare the aforesaid property to be the true and lawful property of the said Leo Simkin placed in my name for convenience only; that I have no interest therein save as agent for the said Leo Simkin, and I do hereby bind myself, heirs, executors and assigns to convey the above described property by proper title in due form of law to the said Leo Simkin, whenever I am so requested or required by him to do so.
"It is distinctly understood and agreed that said Leo Simkin is to pay all taxes, homestead payments and other expenses of the property without contribution by me, and that I am to act solely as agent regarding the aforesaid property."
It is the contention of the plaintiff that she furnished the sum of at least $600 that was used as a part of the down payment of this property, and that this money was funds received by her from the estate of her deceased father and mother. She testified that her brother had purchased her parents' estate and paid her for her interest; that this money was on deposit in a savings account of the Whitney National Bank of New Orleans, No. 26467 in the name of Mrs. Leo Simkin, 701 Tchoupitoulas. The savings account passbook filed in evidence shows that this account was opened on January 11, 1941, and from time to time deposits were made therein until the sum of $365.41 was accumulated on July 1, 1941, then on July 19, 1941, $363 was withdrawn. On August 20, 1941, the sum of $300 was deposited, and on September 2, 1941, the sum of $300 was withdrawn. Again deposits were made in the account from time to time until on July 1, 1942, the sum of $294 had been accumulated and on December 5, 1942, the sum of $293 was withdrawn, leaving a balance of $1. Although the plaintiff had in her possession the savings account passbook she made no attempt to identify the particular transaction that would substantiate her testimony. She contends that the balance of the down payment was borrowed.
It is admitted by the defendant that all of the property, title to which is involved in this appeal, was paid for out of earnings of the restaurant business.
It is the contention of the appellant that he purchased the Tchoupitoulas Street property *918 in the name of appellee for the purpose of depriving his legal wife of any interest she might have in the property, and that all of the funds necessary to purchase said properties were obtained from his income. That thereby all property purchased prior to July 19, 1948 [date of marriage] is the separate property of appellant and that no part thereof could inure to the benefit of appellee.
In passing on the issues of this appeal, we will first determine the existence vel non of a partnership. We have in our law four specific types of partnership, viz: A universal partnership, as provided for in LSA C.C. Article 2829; a particular partnership, as provided for in LSA C.C. Article 2835; a partnership in commendam, as provided for in LSA C.C. Article 2839; and lastly, a commercial partnership, as provided for in LSA C.C. Article 2852. All of these partnerships must be evidenced by a written contract, except that of a commercial partnership, and it appears that inasmuch as no written contract was presented evidencing a partnership that no such contract exists. Therefore, if a partnership existed between the parties during the period of time involved, the only kind that we can further consider is that of a commercial partnership; and the operation of a restaurant could be accomplished through a commercial partnership agreement.
The record is completely barren of any evidence whatever that there was an express contract entered into for the formation of a partnership, or the terms thereof. In fact, plaintiff admitted there was nothing in writing affecting this partnership. Thus, if there was a partnership between the plaintiff and defendant it would have to be implied from their action and conduct. This, then, confronts us with the question of whether a partnership can be established by implication or by implied contract.
LSA C.C. Article 2801, defined a partnership as:
"Partnership is a synallagmatic and commutative contract made between two or more persons for the mutual participation in the profits which may accrue from property, credit, skill or industry, furnished in determined proportions by the parties.
And, in LSA C.C. Article 1766, we find the following provision:
"No contract is complete without the consent of both parties. In reciprocal contracts it must be expressed. In some unilateral contracts the law provides that under certain circumstances it shall be presumed."
We see that a partnership is a synallagmatic and commutative contract, and inasmuch as a synallagmatic contract is a reciprocal contract, and consent, a necessary condition of any contract, must be expressed in a reciprocal contract, we conclude that there can be no partnership contract inferred from the actions of the parties or implied from their conduct. We find, therefore, that there can be no implied contract of partnership between the plaintiff and defendant in this action before us.
It appears to us that the main purpose of plaintiff and defendant living together was for the purpose of concubinage; the plaintiff and defendant were living in concubinage for some period of time prior to defendant's entering business on Tchoupitoulas Street; and that plaintiff's participation in defendant's business enterprise of Simkin Restaurant was primarily in furtherance of the concubinage. For her to continue this illicit relationship, it was necessary for her to help her paramour to prosper. His success redounded to her benefit and security.
There is nothing in the record to indicate to us what the percentage of participation the plaintiff was to have in the profits of the business, nor is there anything in the record to indicate to us what amount of money or the percentage of the purchase price was contributed by the plaintiff in the acquisition of these properties. We are not justified to assume facts not shown by the record.
*919 The burden of proof in this case is on the plaintiff, and we find that plaintiff has not sustained the burden of proving the existence of a partnership or that she contributed any amount to the purchase of any of the properties in question in this action.
There is a presumption that the person named in the act of conveyance as the purchaser of property is the owner thereof.
Passing now to the effect of the counter letter, the pertinent provisions of which are quoted supra, we find no reason for the provisions of LSA C.C. Article 2239 not applying. This article provides:
"Counter letters can have no effect against creditors or bona fide purchasers; they are valid as to all others; but forced heirs shall have the same right to annul absolutely and by parol evidence the simulated contracts of those from whom they inherit, and shall not be restricted to the legitimate [legitime]."
The plaintiff has not shown that any fraud was practiced on her in the confection of this counter letter. It is an authentic act and makes full proof of the contents thereof in the absence of a showing of fraud.
The facts show that the motive for plaintiff and defendant living together was that of concubinage. As noted supra, they lived in open concubinage prior to the acquisition of the business on Tchoupitoulas Street, or any of the other property by defendant. LSA C.C. Article 12, provides:
"Whatever is done in contravention of a prohibitory law, is void, although the nullity be not formally directed."
And, LSA C.C. Article 2804, provides:
"All partnerships are null and void which are formed for any purpose forbidden by law or good morals."
Conceding, arguendo, that a commercial partnership did exist between the parties, the formation of it was for an illegal and immoral purpose not sanctioned by law, that is, concubinage, thus rendering it null and void. See: Sparrow v. Sparrow (1957) 231 La. 966, 93 So.2d 232. In the Sparrow case, the Supreme Court considered several cases and discussed their applicability to facts strikingly similar to these of the instant case. On page 970 the Supreme Court, on page 234 of 93 So.2d said:
"[1] There could have been no legal partnership existing between the decedent and Amelia, because their going to live together was for a purpose forbidden by law.
"Plaintiff has cited cases to the effect that where the concubine has made an actual contribution to the assets of the succession, and the concubinage was merely an incident to the parties' living together, the concubine is entitled to recover a part of such assets. They are distinguishable from the present controversy.
"1. In Delamour v. Roger, 7 La.Ann. 152, the doctrine of equitable ownership was upheld, but there the court found that the concubinage was merely an incident of a business to which the plaintiff concubine had contributed capital.
"2. In Malady v. Malady, 25 La.Ann. 448, the concubine proved that she contributed a large amount of the capital employed to buy real estate, and the property was all bought in her name.
"3. In Lagarde v. Dabon, 155 La. 25, 98 So. 744, this court merely permitted the concubine to recover money which she had advanced.
"The case of Simpson v. Normand, 51 La.Ann. 1355, 26 So. 266, and authorities therein cited, lays the predicate in holding that where the initial motive and purpose for a paramour and *920 concubine coming together was concubinage, and such relationship continues, the concubine is not entitled to recover assets of the joint entity on the theory of partnership. The syllabus of that case correctly states that:
"`When the taint [concubinage] exists, it affects fatally, in all its parts, the entire body of the claim.' See also, Viens v. Brickle, 8 Mart. (O.S.) 11; and Succession of Pereuilhet, 23 La.Ann. 294.'"
In the case of Heatwole v. Stansbury (1947) 212 La. 685, 33 So.2d 196, the plaintiff was seeking to recover one-half of the homestead savings account accumulated during the time he and the defendant lived in concubinage. The point at issue was a claim of ownership of an interest in the savings account. The court said, on page 689, on page 197 of 33 So.2d:
"[2] Having concluded that there did not exist between the plaintiff and the defendant a universal partnership, the court, in order to give effect to plaintiff's claim of a proprietary one-half interest in the savings account, would have to create a species of community which is repugnant to public policy. * * *"
And continuing on page 690, on page 197 of 33 So.2d, the court said:
"[3,4] It is to be noted that concubines, although under certain disabilities, in the interest of good morals, are not prevented from asserting claims arising out of business transactions between themselves, independent of the concubinage. But the claimant must produce strict and conclusive proof before he can be afforded relief. Tested by this rule, the plaintiff here has failed to make out his case. The record is entirely lacking as to proof of any amount deposited in the homestead savings account by him. Therefore, we find no reason to disturb the holding of the lower court that to render any judgment on the evidence produced by the plaintiff `would be conjecture or guess work.'" (Italics added by the court.)
Additionally, plaintiff contends that she is entitled to be decreed the owner of an undivided one-half interest in the property in question because of an agreement she and the defendant entered into prior to a reconciliation on November 21, 1962. The pertinent provision of the contract is the following:
"Both parties agree that their respective attorneys will meet and discuss a way and means of clearing the title to that property which Mr. Simkin alleges to be his separate property and will, in due course take the necessary steps to clear these titles with the ultimate goal of having all properties assume a community status at the time of the completion of this matter."
It is impossible for defendant to accomplish the acts stipulated in the above quoted portion of the contract. At the time of the acquisition of the property defendant was married to a woman named Madge Shaeffer who, acquired an undivided interest in said properties for the reason that title to said properties became a part of the community of acquets and gains that existed between defendant and his said lawful wife. He was powerless to change the status of the property and have the same property assume a community status contrary to the law of this state. This provision of the contract is null, void and of no effect.
For the foregoing reasons, the judgment of the trial court is reversed and annulled, and there is judgment herein in favor of the defendant. Plaintiff to pay all costs of court.
Reversed and rendered.