212 So.2d 459 (1968)
Mary GUERIN
v.
Ivy J. BONAVENTURE et al.
No. 7422.
Court of Appeal of Louisiana, First Circuit.
July 1, 1968.
Thomas S. Gill, Jr., Baton Rouge, for Bonaventure.
C. Alvin Tyler, Baton Rouge, for Stelly.
J. Peyton Parker, Jr., Baton Rouge, for Mary Guerin.
Before LANDRY, REID and BAILES, JJ.
LANDRY, Judge.
By this action, plaintiff, Mary Guerin, concubine of defendant, Ivy J. Bonaventure, seeks judgment against her said paramour and his business associate, John L. *460 Stelly, declaring plaintiff to have a 25% interest in two partnership enterprises conducted by defendants pursuant to verbal agreements.
The trial court rendered judgment in favor of plaintiff. Defendants have appealed. In so decreeing, we find the trial court erred and therefore reverse the decision rendered below.
This matter was previously before us when plaintiff's complaint was dismissed upon defendant Bonaventure's exception of no right and no cause of action. Said judgment of dismissal, signed October 18, 1965, also dissolved a writ of judicial sequestration issued by the trial court upon institution of plaintiff's suit. On the former appeal, see Guerin v. Bonaventure et al., 190 So.2d 476, we held plaintiff's petition stated a right and cause of action which entitled her to a hearing of her complaint. We therefore remanded this matter to the lower court for trial on the merits and reinstated the writ of sequestration initially entered by the trial court. On the previous devolutive appeal taken December 14, 1965, it was not brought to this court's attention that subject partnerships had been dissolved by defendants on November 11, 1965, on which date no appeal was pending from the former decree of the lower court.
After remand, defendant Stelly excepted to plaintiff's petition on the ground it stated no right or cause of action, the basis for the exception being the aforesaid dissolution agreement entered into between Stelly and Bonaventure. In addition, Stelly third partied Bonaventure praying for indemnification by the latter of any judgment rendered against Stelly in plaintiff's favor considering Stelly and Bonaventure had divided the assets of both subject partnerships on an equal basis.
Appellant Stelly contends the lower court erred in (1) decreeing plaintiff entitled to a 25% interest in the subject partnerships Stock Yard Steak House (Steak House) and L & M Company (L & M), respectively, and (2) declaring said partnerships dissolved and plaintiff entitled to an accounting thereof considering both had previously been dissolved at a time when no suspensive appeal was pending from the judgment dismissing plaintiff's initial suit. No mention is made by Stelly of the failure of the trial court to pass on his third party complaint against defendant Bonaventure.
Appellant Bonaventure maintains the trial court erred in (1) finding as a fact that a contract of partnership existed to include plaintiff; (2) inferring and implying a partnership agreement from the conduct and actions of the parties living in concubinage; (3) not finding that plaintiff and himself were incapable of entering into a partnership agreement by virtue of their living together in concubinage; and (4) finding that a verbal contract of partnership existed between plaintiff and himself.
In resisting plaintiff's claims, defendants first contend no partnership agreement may be shown by plaintiff because all the agreements were verbal. In so contending appellants rely primarily upon Heatwole v. Stansbury, 212 La. 685, 33 So.2d 196. The Heatwole case, supra, is indeed authority for the proposition that under no circumstances may a universal partnership be shown by parol evidence because of the prohibition contained in LSA-C.C. Article 2834 against such partnerships being created by verbal agreement. Nevertheless, that case is authority for the rule that where the labor and efforts of the concubine have contributed a full share towards the accumulation, she is in equity entitled to one-half of the property so acquired.
Nor do we find any merit in the further contention of defendants that the illicit relationship between plaintiff and Bonaventure precluded the possibility of any partnership arrangement between them. This argument is based on the theory that the law, because of moral reasons, proscribes *461 any claim by either party living in concubinage against the other arising from a joint business undertaking.
Our jurisprudence appears settled to the effect that predicated upon equitable principles, the claims of a paramour and concubine will be recognized and enforced with respect to joint or mutual commercial ventures, provided such enterprises arose independently of the illicit relationship. Heatwole v. Stansbury, 212 La. 685, 33 So.2d 196; Sparrow v. Sparrow, 231 La. 966, 93 So.2d 232; Foshee v. Simkin, La.App., 174 So.2d 915.
The rationale of the rule pronounced in the Heatwole, Sparrow and Foshee cases, supra (and the numerous authorities therein cited) is that where the concubinage is merely incidental to the business arrangement, the equitable rights of both parties will be recognized and enforced provided they be established by strict and conclusive proof. Stated otherwise, the rule is that if the commercial enterprise is independent of the illegal cohabitation, each party may assert his rights in the common endeavor.
In applying the rule, the courts have in effect permitted either concubine or paramour to establish what amounts to a partnership with the other party in the operation of a particular business or venture. Thus, in Delamour v. Roger, 7 La.Ann. 152, the court recognized the interest of a concubine in a business upon finding that the concubinage was incidental to the commercial venture rather than the business being incidental to the illicit relationship. In the Delamour case, supra, it is to be noted that the court also found the business in question was commenced with the concubine's finds and that certain properties concerned were acquired in her name.
In Malady v. Malady, 25 La.Ann. 448, the court permitted the concubine to recover upon showing she contributed to the purchase of property standing in her name. In the Malady case, supra, no finding was made as to whether the acquisitions were independent of the immoral relationship.
The alleged partnership claims of the concubine were rejected in Lagarde v. Dabon, 155 La. 25, 98 So. 744, wherein it was held the rights asserted were so interwoven and blended with her remuneration as concubine as to be practically indistinguishable therefrom. The concubine, however, was allowed recovery of sums shown to have been advanced for the purchase of some assets held by her paramour.
In denying the claims of a concubine who had lived with her paramour as his house servant and laborer for a period of 23 years, the court in Simpson v. Normand, 51 La.Ann. 1355, 26 So. 266, stated the rule in these words:
"Conceding all that plaintiff claims, and considering all she admitted under oath, the value which is placed upon her services as house servant and laborer of the defendant is so completely combined with those in remuneration for her illicit cohabitation with Normand as concubine as to be completely indistinguishable one from the other; and the taint existing, it fatally affects plaintiff's entire demand, in all its parts, and renders it wholly and entirely void. For the enforcement of a contract thus circumstanced she has neither remedy nor redress in a court of justice."
In determining whether such claims are incidental to the illicit relationship and therefore proscribed as in derogation of law, namely, LSA-C.C. Article 12, which states that whatever is done in contravention of moral law is void, and LSA-C.C. Article 2804, which stipulates that partnerships are null when formed for any purpose contrary to law or good morals, each case must, of couse, be determined in the light of its own peculiar facts and circumstances.
In resolving disputes of this character, one circumstance which appears to have been given considerable weight is whether commencement of the business venture precedes the living together. Viens v. Brickle, 8 Mart., O.S., 11.
*462 In Delamour v. Roger, supra, the court appears to have laid considerable stress upon the degree of contribution rendered by the claimant. In the cited case, it seems to have been held in substance that if the claimant's efforts contributed a full share towards the accumulation, and all other necessary tests were met, equity demands recognition of the rights of such a party.
While we concede the two factors above mentioned are certainly of importance in determining an issue of this nature, we do not feel nor do we think, the jurisprudence establishes that these two criteria are exclusive. Most assuredly, there are other circumstances to be considered in these cases. We believe it obvious that the totality of all relevant attending circumstances must be considered in settling questions of this kind.
The facts of the present controversy are, in the most part, not in dispute except as otherwise hereinafter indicated. The salient circumstances are that in or about 1947, defendant Bonaventure was then lawfully married and worked on construction jobs as a welder. As a sideline he was jointly engaged with plaintiff's mother and one Milton Jarreau in the operation of a bar in Rosedale, Iberville Parish. Also at this time, plaintiff, who was lawfully married and had one child, had left her husband and was living with her mother. Plaintiff and Bonaventure met under these circumstances and began living with each other as man and wife in open concubinage. Plaintiff was legally divorced from her husband in 1949, Bonaventure from his wife in 1961. Notwithstanding their ability to wed following the latter divorce, these parties have never married. The venture in Rosedale failed whereupon Bonaventure and plaintiff's mother opened another similar establishment nearby. This latter undertaking lasted about one and one-half years and upon failing was sold for a total of $400.00. Bonaventure continued employment as a welder on construction jobs and eventually became interested in the music business. He initially acquired five phonographs or "juke boxes" in or about 1950. The proceeds from such undertaking were used to meet living expenses and acquire additional units. By degrees it seems Bonaventure acquired a considerable number of such devices which were placed in bars and other places of amusement. He later branched out into pinball and other coin operated apparata. It also appears he accumulated considerable obligations.
In or about 1955, Bonaventure became associated with another party, Bonacarso, in an unincorporated concern known as B & B Company whose chief business was the operation of music boxes and other coin operated machines. Later this enterprise was incorporated under the name of Baton Rouge Amusement Company (Amusement), the sole incorporators of which were Bonacarso, Bonaventure and plaintiff. This venture continued about 5 years during which time the corporation acquired numerous music boxes and coin operated devices but also became involved financially to the extent there were many judgments against the corporation and Bonacarso and Bonaventure personally. Due to these circumstances, the corporation was dissolved, Bonaventure and Bonacarso then divided the remaining assets and the locations (which the record discloses to be of considerable value to an operator) and thenceforth Bonaventure operated alone. At about this time Bonaventure began purchasing machines in plaintiff's name because of his then poor credit rating and the numerous judgments outstanding against him. In or about 1960, Bonaventure purchased the defunct Steak House. Being unable to finance the venture alone, Bonaventure contacted Stelly and the two entered into a verbal partnership whereby each contributed $5,000.00 in cash or the equivalent thereof to equip and operate the Steak House. After some two years of operation, the profits from the Steak House were used to purchase music boxes and various machines in the name of *463 an additional partnership between Bonaventure and Stelly denominated L & M. This undertaking expanded so that over the years it has accumulated assets estimated at approximately $100,000.00. Admittedly, L & M owes obligations which apparently approximate $40,000 to $50,000. As previously shown, plaintiff seeks a 25% interest in both the Steak House and L & M on the theory that she is entitled to one-half of Bonaventure's half interest therein.
In analysis plaintiff testified she instituted the suit because she felt entitled to one-half the money she and Bonaventure accumulated over the years. She insisted that at least $600.00 given her by her former husband, in settlement of their community affairs following their divorce, was given to Bonaventure who invested it in music boxes. She also maintains that he utilized her mother's share of the $400.00 received from the sale of the bar sold in about 1948. Plaintiff also stated that she worked from time to time in the Steak House when needed, kept books for Bonaventure and occasionally assisted him in checking his machines. Admittedly, she kept Bonaventure's bank account in her name, drawing on it at will to defray both her personal needs and the expenses of the mutual household. Plaintiff further testified that when Bonaventure became financially involved after failure of the B & B venture, she purchased machines in her name as Bonaventure was unable to obtain credit. Her testimony further shows that her connection with the Steak House was extremely limited although the license for the operation was carried in her name one or two years. The remaining years, the license was taken out variously in Bonaventure's name and that of a waitress who worked there. Regarding L & M, plaintiff kept the check book and was authorized to sign checks on its bank account jointly with Stelly.
Defendant Bonaventure's testimony may be summarized by stating that in general it agrees with that of plaintiff up to the time of purchase of the Steak House with the exception that he denies the small amount of money received by plaintiff from her former husband was used in any of defendant's operations. In this regard he stated that plaintiff received about $400 to $500 which they spent. Bonaventure freely admits that he lived openly with plaintiff, supported her as his wife and never attempted to hide the illicit nature of their relationship. He explained that while employed as a welder, he became interested in placing music boxes in bars, cafes and other similar places of amusement and entertainment. He purchased such devices on time and plowed the proceeds therefrom into additional equipment. Frequently he was compelled to surrender his total paycheck to creditors to pay notes on his equipment. He testified that in starting the Steak House operation, Stelly invested $5,000.00 while he, Bonaventure, contributed the lease on the premises which he had acquired, some equipment he possessed and approximately $4,000.00 cash. The verbal arrangement was that he and Stelly would be equal partners in the venture. As he accumulated funds from this operation, he gave his share to plaintiff who deposited it in the bank in her name to pay their bills. From the profits accumulated as a result of the Steak House operation, Bonaventure conceived formation of the second partnership which was named L & M at his suggestion, the M in the name admittedly being inspired by his relationship with plaintiff. Because of the then deplorable state of his credit rating, he took no record part in the operation of L & M although the agreement with Stelly was that Bonaventure and Stelly would be equal partners as in the Steak House. Bonaventure conceded that plaintiff assisted in keeping the books for L & M and wrote the checks jointly with Stelly. In effect he emphatically denied there ever was any intention that plaintiff share his interest in these businesses but that the arrangements and agreements were strictly between Stelly and him.
*464 John Lambert Stelly (from whence the L in L & M), confirmed in detail Bonaventure's version of the business transactions between them. He conceded he did not know whether plaintiff advanced any of the funds contributed by Bonaventure to the Steak House venture. Stelly also stated that he and plaintiff signed checks on L & M for payment of its expenses, including notes for the purchase of machines, because of the status of Bonaventure's credit. Stelly conceded that L & M income tax returns were signed as though the business belonged to him and plaintiff alone, again because of Bonaventure's financial status. Periodically, usually weekly, he would meet with Bonaventure and count the proceeds from the various locations of the machines operated by L & M. By mutual agreement, some of the locations were checked by Stelly because he knew the owners or operators best. For the same reason, Bonaventure checked other locations. After the proceeds were counted in each other's presence, each then presented evidence of incurred expense, including notes on equipment purchased, which expenses were then deducted. Each party used this money to pay the expenses for which he was responsible and the remainder was divided equally between Bonaventure and himself. Stelly took his half and disposed of it at will. He had no idea how Bonaventure shared the other half with plaintiff, if at all. In his own words, Stelly stated that he considered plaintiff as a "partner" in the same sense that he considered his wife as his partner. In this regard it appears Stelly's spouse took absolutely no part in the affairs of L & M but did work to some extent in the Steak House.
It is undisputed in the record that defendant Bonaventure has since the inception of his relationship with plaintiff in effect been her sole source of support. It further appears that during the course of his business relationship with Stelly, a home was purchased for Bonaventure in Stelly's name and remained so until the time of trial of this cause on remand. Moreover, it is abundantly clear that plaintiff and Bonaventure resided in this home together with plaintiff's son from her former marriage, to all intents and purposes as a family. In addition, since the dissolution agreement entered into between Stelly and Bonaventure on November 11, 1965, plaintiff and Bonaventure have resided together at least part of the time. It further appears that plaintiff is still occupying the house which stands in Stelly's name and when plaintiff and Bonaventure are not living together nevertheless Bonaventure provides means for plaintiff's support.
From the foregoing, we conclude the trial court erred in not applying to the case at bar the rule announced in Sparrow v. Sparrow, 231 La. 966, 93 So.2d 232; Simpson v. Normand, 51 La.Ann. 1355, 26 So. 266 and Foshee v. Simkin, La.App., 174 So.2d 915.
We conclude, therefore, that the initial motive for the relationship between plaintiff and Bonaventure was their mutual desire to enter into a state of concubinage. Nothing in the record even remotely suggests that their union resulted from a previous business or commercial arrangement. On the contrary, we find that the business arrangements in which plaintiff now claims an interest arose incidental to and long after commencement of her living with Bonaventure rather than independently thereof. In view of the parties living together as man and wife, it was only natural that plaintiff lend some assistance to the paramour who furnished full subsistence and a home for plaintiff and her child as if they were his lawful wife and offspring. In this manner plaintiff received full remuneration for services rendered to defendant Bonaventure in performing the duties of mistress of his household and some measure of assistance in his various business enterprises. Also significant is the fact that the record is devoid of any evidence that Bonaventure ever considered plaintiff as actually owning an interest in either business. The conclusion is inescapable that Bonaventure placed his bank account and certain properties in plaintiff's name *465 solely and only as a matter of convenience and to thus put his assets beyond the reach of his creditors. It is equally clear that in the arrangement with Stelly, plaintiff was but a person interposed to accommodate her paramour. Plaintiff's actual participation in the affairs of L & M were limited to keeping the checkbook of the corporation and the use of her name as a third party interposed to disguise Bonaventure's interest. Unquestionably, Bonaventure's contribution was vastly more than that of plaintiff. Bonaventure and Stelly actually did all the work of purchasing the machines, finding suitable locations therefor, attending to their maintenance and collecting the proceeds. Moreover, despite the fact that plaintiff's name appeared in the title of the concern, she, in fact, exercised no control whatsoever over the daily operation of the business.
All of the circumstances considered, the services rendered by plaintiff are so completely intertwined with her illegal cohabitation with Bonaventure as to be utterly indistinguishable therefrom. In such circumstances, the remuneration received in the form of support and subsistence over the years is in law deemed full remuneration therefor. Consequently she has failed to establish her right to legal remedy or redress. Simpson v. Normand, 51 La.Ann. 1355, 26 So. 266.
Nor do we find that plaintiff has strictly and conclusively proved investment of any funds in Bonaventure's several enterprises. At no time during her relationship with Bonaventure has she had any outside employment which would have provided her with independent funds. Her testimony regarding funds received from her former husband are vague and somewhat uncertain as to amount. Bonaventure categorically denied any of plaintiff's funds were invested by him. Plaintiff's contrary testimony is uncorroborated and unconfirmed in any manner. Under such circumstances plaintiff has not produced that degree of proof required in cases of this nature.
The fact that Stelly, a third party foreign to the illicit relationship between plaintiff and defendant, was a member of the partnership in question, affords plaintiff no comfort or relief. Plaintiff's claim is based upon the contention that she is entitled to half of Bonaventure's half of the enterprises concerned. For the reasons hereinabove set forth, the law does not grant her such remedy.
Accordingly, it is ordered, adjudged and decreed that the judgment of the trial court in favor of plaintiff Mary Guerin and against defendants Ivy J. Bonaventure and John L. Stelly is hereby annulled, reversed and set aside and judgment rendered herein in favor of said defendants dismissing and rejecting said plaintiff's demands at plaintiff's costs.
Reversed and rendered.