### CRECY KINLOW v. ANNA KINLOW ET AL.

#### No. 2611.

1. **Resulting Trusts.**—In 1869 an enfranchised negro man began to live with a negro woman as husband and wife, but no marriage ceremony was ever performed. Thus they lived until 1887, during which time land was purchased and paid for with money earned by the labor of the woman and a deed made to the man. In 1887 the man was married to another woman and died. In a suit brought by the woman with whom he had so long lived to recover the property, *held:*

1. A resulting trust existed in favor of the plaintiff.

2. In the absence of any evidence that the parties understood that the relation of debtor and creditor existed it will be presumed that the parties agreed that the title should be held for the benefit of the woman who paid the purchase money.

APPEAL from Washington. Tried below before Hon. I. B. McFarland. The opinion states the case.

*Bassett, Muse & Muse,* for appellant.— 1. That the provisions of Revised Statutes, article 2846, upon which the judge's conclusions as to the marriage of John and Anna Kinlow were based, do not apply for the reason that they did not begin to live together during the existence of the "laws of bondage," and at a time when they were "precluded from the rights of matrimony." Their cohabitation commenced after their emancipation and after they had become subject to the general laws which regulate the institution of marriage among free citizens capable of contracting. It was illicit concubinage, not lawful wedlock, and did not invest the parties to it with the rights and privileges which the law has reserved for those only who have entered into the highest and holiest ob-

ligation known to the law. Clements v. Crawford, 42 Texas, 601, 603;
Oldham v. McIver, 49 Texas, 556, 563, 564; Steward v. The State, 7
Texas Ct. App., 326, 327, 328.

2. There being no subsisting marriage with Anna Kinlow, there was
nothing to prevent John Kinlow from contracting a lawful marriage with
the appellant, and the judge's conclusion to the effect that their inter-
marriage was void was erroneous.

3. The erroneous theory of a valid slave marriage between John and
Anna Kinlow taints the whole of the judge's conclusions, including that
which holds the premises community property because of the purchase
during the existence of the supposed marriage, and awards the premises
to her as surviving widow in the absence of issue or collaterals entitled
to take.

4. No trust in the premises would arise upon the facts found, although
she might in a proper case upon the same facts be held to be a creditor
to the extent of her earnings shown to have been actually invested in the
property.

*Eddins & Ewing,* for appellees. — 1. If John Kinlow and Anna Kin-
low, both of whom had formerly been slaves, lived together at any time
before the 15th day of August, 1870, as husband and wife, and were so
living together at said date, then they were in fact husband and wife,
and Anna Kinlow, upon being deserted by her husband, was entitled to
hold the property.

2. If Anna Kinlow was not in fact the wife of John Kinlow, but be-
lieved that she was his wife, being induced by John Kinlow to so believe,
and by her labor and otherwise acquired means and paid for the lot in
controversy, then such lot would be her separate property, even though
John Kinlow took the title to said property in his own name. Tarpley
v. Poage, 2 Texas, 139; Neill v. Keese, 5 Texas, 23; Long v. Steiger, 8
Texas, 460; Burdett v. Haley, 51 Texas, 540; 1. Pom. Eq. Jur., sec. 155;
Perry on Trusts, sec. 124.

GAINES, ASSOCIATE JUSTICE.—John Kinlow as plaintiff in the court
below brought this action in the statutory form to try the title to a lot in
the city of Brenham. Mrs. Pinie Green and Anna Kinlow were made
defendants. John Kinlow died while the suit was pending, and Crecy
Kinlow intervened, alleging that she was the surviving widow and sole
heir of the original plaintiff. Mrs. Green did not answer and there was
a judgment by default against her. Anna Kinlow answered, alleging
that she was the lawful wife of John Kinlow before and at the time of
his marriage to Crecy Kinlow, and that the property was acquired during
the marriage of herself and her husband, and was their homestead, and
also that the property was paid for with her own money, and that the

title to the same was taken by John Kinlow in his own name in fraud of her rights.

The case was tried by the court without a jury and resulted in a judgment in favor of Anna Kinlow. Crecy Kinlow appeals and assigns as error that the court erred in its conclusions of law.

The following facts were found by the court:

"Some time after emancipation and prior to 1869, John Kinlow and the defendant, Anna Kinlow, formerly Anna Tarver, both of them having formerly been slaves while living in the State of Alabama, commenced living together as husband and wife, under some sort of ceremony or agreement, but were never legally married, and were living together in that relation on the 15th day of August, 1870. They continued to live together in Alabama until 1871, when they removed to Washington County, Texas, where they lived together as before, representing themselves as husband and wife, and were so regarded in the community in which they lived, until the early part of 1887, and raised a family of children, and while so living and cohabiting together the land in controversy was purchased and paid for with money earned by the labor of Anna Kinlow, but the deed to the same was taken in the name of John Kinlow."

The court also found that John Kinlow and Crecy Kinlow were "married according to the forms of the law" in 1887. As conclusions of law the court held—

"1. That John Kinlow and Anna Kinlow are to be considered as having been legally married.

"2. The marriage between John Kinlow and Crecy Davis was a nullity, and she can take nothing as his surviving widow.

"3. The property in controversy was the community property of John Kinlow and Anna Kinlow and was their homestead, and Anna Kinlow as the surviving widow of John Kinlow is entitled to hold the same."

We deem it unnecessary to determine whether the court's conclusion as to the relation between John Kinlow and appellee is correct or not. If they are not to be considered as husband and wife then he had no claim upon the earnings of the reputed wife which paid for the property, and we are of opinion that under the peculiar facts of the case a trust resulted in her favor. In the absence of some evidence either direct or circumstantial that it was understood between the parties that the relation of debtor and creditor was to be created, the presumption is that the parties intended that the grantee in the conveyance should hold for the benefit of the party who paid the purchase money. From the conclusions of the court upon the evidence (which is not before us) the real fact seems to be that the parties to the transaction considered themselves husband and wife at the time of its consummation, and that the supposed existence of this relation was the consideration which induced appellee

at least to permit the money she had earned to be invested in the lot. She did not regard John Kinlow as a stranger to whom she was lending money, but as her husband and agent whom she intrusted with the money to invest for her benefit, or at least for the benefit of both. If he could have successfully denied the marriage and have repudiated his reputed wife,.he could not have repudiated the trust reposed in him by her upon faith of the supposed relation. If she was not his wife the money which paid for the lot was hers, and the property should be held to have been purchased for her benefit. Appellant finds herself in this dilemma: if appellee was the lawful wife of John Kinlow then appellant's marriage with him was void—she was not his widow, and could claim nothing in his estate; if appellee was not the lawful wife, then upon the conveyance of the property to her reputed husband a trust in it resulted .in her father. It follows that upon either view of the case the judgment appealed from is correct, and it is therefore affirmed.

*Affirmed.*

Opinion February 8, 1889.