W. U. PERKINS ET AL. v. GEORGE H. DAVIDSON ET AL.

Decided March 3, 1900.

**1. Trespass to Try Title—Parties—Costs.**

Where, in trespass to try title, the petition alleges that P. formerly held the land in trust for the plaintiffs, and afterwards, in repudiation of the trust, conveyed it to the defendant M., who had knowledge of the trust, and asks a recovery of the land only as against M., stating a cause of action against P., only in that it alleges that he and M. converted certain improvements on the land belonging to plaintiffs. and the court, on the trial, finds no liability on account of the conversion, P. is entitled to recover his costs.

**2. Same—Resulting Trust—Variance.**

Where plaintiffs in trespass to try title specially plead their title, alleging a resulting trust in that defendant used money subscribed by them in his purchase of the land, and that the purchase was for their benefit, they are not entitled to recover upon proof showing that defendant used his own money in such purchase, although the facts disclosed show a trust such as, under different pleadings, would warrant a recovery by plaintiffs.

**3. Same—Recovery for Undivided Interest.**

Plaintiff in trespass to try title can not recover upon allegation and proof of an undivided interest, without establishing what that interest is.

**4. Same—Indorsing Petition—Practice.**

In trespass to try title a failure to indorse upon the petition that it is an action of trespass to try title, as prescribed by the statute, can not be urged by general demurrer, nor raised for the first time on appeal.

APPEAL from Nacogdoches. Tried below before Hon. TOM C. DAVIS.

*Ingraham, Ratcliff & Huston* and *Beeman Strong,* for appellants.

*Blount & Garrison,* for appellees.

GILL, ASSOCIATE JUSTICE.—George H. Davidson and his coplaintiffs brought this suit against W. U. Perkins and V. E. Middlebrook, appellants (defendants below), to recover two lots situated in the town of

Nacogdoches, Texas, alleging that on or about the 17th day of February, 1888, the Petroleum Prospecting Company, having large oil interests some miles distant from the town of Nacogdoches, and desiring to construct and maintain a pipe line for the purpose of conveying oil from the oil wells to the town of Nacogdoches, there to be stored in large tanks, asked of the enterprising citizens of said town a donation of a lot or lots upon which storage tanks should be constructed. The citizens of the town, believing that the construction of the pipe line and tanks would be beneficial to the development and progress of the town, proceeded to subscribe, individually, various sums of money toward the purchase of a lot for the purpose proposed. In carrying out such undertaking plaintiffs are alleged to have subscribed and paid certain named amounts aggregating $282.50. This money is alleged to have been paid to W. U. Perkins, one of the defendants, for the purpose of paying for a lot in the town for the erection of the storage tanks thereon.

It is further alleged that on February 17, 1888, said Perkins, acting for plaintiffs (and for other subscribers whose names are alleged to be unknown), with the money so subscribed purchased from Emily Wells the lot in question, and received a conveyance therefor in his own name. That said conveyance was in fact taken in the name of Perkins in trust for plaintiffs, for the purposes before named, he having paid for same with the money so subscribed. That following up the purpose for which the same was purchased, Perkins thereafter conveyed the lots to the oil company, to be used by it for its oil tank in connection with the proposed pipe line. This last conveyance is alleged to have been made in conformity with the wishes of plaintiffs and the conditions of their subscriptions. Afterwards the oil company suspended operations, and at the suit of Perkins the lot was recovered under a provision in the deed whereby it reverted upon nonuser. This recovery is alleged to have inured to the benefit of the plaintiffs. It is then averred that Perkins thereafter conveyed an undivided half interest in the lot to G. F. Ingraham, and that he and Perkins and one Ratcliff, the partner of Ingraham, conveyed to V. E. Middlebrook, one of the appellants. Each of these parties is alleged to have purchased with full notice of plaintiffs' claims and the facts attending the acquisition of the lot. Plaintiffs then allege that by reason of the premises they, together with other subscribers, are the real owners of the lot and entitled to the possession thereof, and they pray that it be so decreed.

The answers controverted all the material allegations, and Middlebrook pleaded valuable improvements in good faith and purchase for value without notice. Judgment was for plaintiffs for an undivided half interest in the lots, which were valued by the court, as was also the improvements of Middlebrook, and plaintiffs were permitted to acquire the entire interest adjudged to them by paying to Middlebrook within one year a named sum for his improvements, in default of which he might pay them a named sum and acquire the entire estate. Middlebrook was adjudged to be the owner of an undivided half interest under his deed

from Perkins, Ingraham, and Ratcliff, on the theory that Perkins had the right as trustee to employ attorneys for the prosecution of the suit to recover the land from the oil company and to that end might convey a part of the land in payment of a reasonable fee. This feature of the judgment is not assailed by appellees.

Perkins excepted to the petition on the ground that it showed that he had parted with all interest in the land, and that therefore no cause of action was alleged as against him. The refusal of the trial court to sustain this exception is assigned as error. We think appellants' contention that in one aspect of this case it is a suit in trespass to try title, is clearly correct, and the petition itself disclosing that Perkins had parted with all interest in the property, he was in no sense a proper party in so far as the recovery of the land was concerned. Neither he nor Ingraham were vouched in by Middlebrook as warrantors. But the petition charges that he, together with Ingraham and Middlebrook, wrongfully converted certain improvements situated on the land and belonging to plaintiffs, and this allegation disclosed a cause of action against him. The mere fact that he was trustee in the alleged deed from Mrs. Wells would not make him a proper party, since he is alleged to have repudiated the trust and parted with the property, and no judgment is asked against him in case Middlebrook is shown to be an innocent purchaser. In the present state of the pleadings, the court having found no liability on account of the alleged conversion, Perkins should have recovered his costs.

The fourth, fifth, and eighth assignments are presented together, and assail the judgment on the ground that there was no evidence to support the finding that the deed from Mrs. Wells to Perkins constituted a trust in favor of plaintiff. It will be remembered that the trust alleged is predicated upon certain stated facts, and no express trust is alleged, either written or parol. The allegation is that the money subscribed by plaintiffs and their cosubscribers was used by Perkins in the purchase of the land, and that the purchase was for their benefit and made in furtherance of the design alleged. This was the case appellants were called to meet. The question is, did the evidence support the allegations?

The evidence discloses the facts to be that certain citizens of Nacogdoches (plaintiffs among the number) had accepted a proposition of the Petroleum Prospecting Company to build a pipe line from the oil wells to Nacogdoches; the citizens to deliver along the proposed line 100,000 pounds of pipe and to furnish the lot in Nacogdoches upon which the oil tank was to be erected and maintained. The undertaking on the part of the citizens was to be accomplished by voluntary subscription. On the 17th of February, 1888, the citizens had a meeting for the purpose of purchasing the lot selected by the company for the erection of the tank. At this time little or no money had been raised by subscription. Among those present at this meeting were appellant

W. U. Perkins and George F. Ingraham. Perkins was among the number of citizens interesting themselves in securing the location of the oil depot at Nacogdoches. He had before, and did thereafter, act on committees appointed by the citizens to further the project, and is shown in many ways not only to have fully known the purpose of the citizens, but to have been cognizant of their intention to buy the particular lot in question as the only lot offered which was suitable for the oil company's business. Ingraham was present at this meeting as the agent of Mrs. Wells for the sale of the lot. The purpose of this meeting had failed and an adjournment was imminent, when Ingraham stated that he had been offered his price for the lot, the offer coming from another party, and that if the citizens wanted it they must act at once. He stated the price to be $250. He then started to go, when Perkins arose and said, "I will take it at that price." Ingraham accepted, and the meeting adjourned. On the following day the deed was executed to Perkins individually, and he gave his individual check for the money. The entry on his books of that date shows that he bought it for the furtherance of the citizens' plans with reference to the location of the oil tank, and Perkins admits that he did not purchase for speculation and probably purchased for that purpose. The arrangements between the citizens and the oil company were pending for about two months thereafter before Perkins finally deeded the property to the oil company. The recited consideration was $250 cash, paid by the citizens of Nacogdoches. It recited the purpose for which said sum was paid by them, viz., to comply with their agreement with the oil company, and to secure the building of the pipe line and the location of the tank on the lot in question. A provision was also inserted that the property should revert to the grantor in case of nonuser by the company. The consideration of $250 was not in fact paid to Perkins by the citizens until several days after the date of the deed from Perkins. Upon the consummation of this transaction the pipe line was completed and the oil tank established on the lot conveyed. Thereafter the company failed and the lot ceased to be used for the purposes contemplated by the terms of the deed, and Perkins, through Ratcliff and Ingraham, his attorneys, brought suit for its recovery. This suit was successful, and Perkins, in pursuance of a prior agreement, conveyed to Ingraham an undivided half interest in the premises for his fee in the prosecution of the suit. Perkins and Ingraham, joined by Ratcliff (Ingraham's law partner), sold the property to Middlebrook. Plaintiffs then instituted this suit, basing their right to recover the land on the establishment of a resulting trust in Perkins for their benefit on account of the original purchase of the lots from Mrs. Wells, and notice to Ingraham, Ratcliff, and Middlebrook of their equities.

That the facts alleged would constitute a resulting trust in favor of plaintiffs and their cocontributors is well settled, but such a trust must arise out of the facts existing at the time title is taken in the person sought to be charged with the trust. No subsequent acts of the parties

will suffice. The transaction itself must give rise to the trust. Kinlow v. Kinlow, 72 Texas, 639; Ouray v. Sanders, 77 Texas, 280, and authorities cited; Parker v. Coop, 60 Texas, 118; 1 Perry on Trusts, sec. 133.

It is clear from the facts above stated as having been established by the evidence, that no trust resulted from the facts existing at the time; for the reason that the money of the parties complaining was not used in the purchase of the land and had not been subscribed at that time.

Whether appellees will be able to show that Perkins acted for the subscribers in the purchase of the land under a parol agreement that he should purchase it for them and that they would reimburse him, or whether, under all the facts and circumstances, he occupied a fiduciary relation to the subscribers which would render his taking the title in himself an act of bad faith, is a question which we relegate to the court below to be determined under appropriate averments on another trial. If it be shown that he acted for and by authority of the subscribers, with the understanding that the purchase was to be for their common benefit and in furtherance of their common purpose, and that he would be reimbursed by them for the purchase price, the case will be brought within the rule laid down in Gardner v. Russell, 70 Texas, 456; Parker v. Coop, 60 Texas, 118, and Halsell v. Coal Company, 19 Texas Civil Appeals, 564, and the trust would be established. Such a trust might be established by circumstantial evidence as well as by direct proof. Plaintiffs having pleaded their title specially must establish it as alleged, and the proof adduced does not conform to the pleadings. In view of the necessity of another trial we express no opinion as to the probative force of the facts and circumstances adduced in establishing an agreement on the part of Perkins to purchase the property for the benefit of the subscribers. For a like reason we ignore the assignment of Middlebrook to the effect that the evidence is insufficient to show notice on his part of the alleged equities of plaintiffs.

Another objection urged against the judgment is that the interests of plaintiffs in the property is not disclosed either by the pleadings or the evidence. The petition shows that the plaintiffs named subscribed a sum in excess of the sum paid for the land, and that there are other subscribers whose names are not known and the amount of whose subscriptions is not stated. It is made to appear by the evidence that about $1000 was subscribed for the construction of the pipe line and the purchase of the lot. It is shown that the other subscribers are all jointly interested with plaintiffs in the lots. This being true, it would be necessary either to make them parties and compel them to disclose their interests, or else allege their specific interests and sue for their benefit as tenants in common. In Baldwin v. Goldfrank, 88 Texas, 249, it is said: "The statute requires that if plaintiff in an action of trespass to try title sues for an undivided interest, the amount of the interest claimed shall be set out by him." Rev. Stats., art. 4786. He may recover a less interest, but he must establish his title to the interest sued

for or to some less interest definite in extent. He can not recover by proving that he owns some undivided portion of the land, without establishing what that portion is. The judgment ought to determine the rights of the parties. See also Howard v. Masterson, 77 Texas, 41; Sowers v. Peters, 59 Texas, 216.

In this case, had the proof beeen sufficiently definite to enable the court to define the interests of the various parties, the judgment rendered is erroneous, for it was proved that Perkins had also contributed to the fund upon which the plaintiffs' interests are based, and Middlebrook, having acquired whatever interest Perkins had, was equally a tenant in common with plaintiffs in case of recovery by them, and such interest should in any event have been adjudged to him.

As to the complaint that the petition was not indorsed as required by the statute, it is sufficient answer to say that this was an action of trespass to try title only as against Middlebrook, and he did not except to the petition on that ground. Under what circumstances a failure to properly indorse the petition would be reversible error is not made clear by the decisions, but it is well settled that it can not be urged by general demurrer, nor for the first time in the appellate court. Bradley v. De Roche, 72 Texas, 467; McIlhenny v. Miller, 68 Texas, 535.

It is not deemed necessary to notice the remaining assignments. For the errors indicated the judgment is reversed and the cause remanded.

<em>Reversed and remanded.</em>