J. E. HAYWORTH, TEMPORARY ADMINISTRATOR, v. MARGRETH WIL-
LIAMS ET AL.

No. 1912.    Decided February 24, 1909.

**1.—Limitation—Husband and Wife—Adverse Possession.**

A claim to land as wife of the one holding title was not adverse to such owner and could not be the basis of limitation against him though the marriage was illegal. (P. 312.)

**2.—Homestead—Administration—Illegitimate Child.**

The statute providing for setting aside the homestead, in administration for the "benefit of the widow and minor children and unmarried daughters remaining with the family of deceased," protects legitimate children only; it cannot be invoked in favor of an illegitimate widowed daughter remaining with the family.  (Pp. 312, 313.)

**3.—De Facto Wife—Acquisition of Property.**

One unlawfully married to a man to whom real property was conveyed may establish an interest therein by showing that their common earnings or property went to pay for it; her rights would not be those of a wife; nor other than those of another similarly contributing to its purchase; nor would any contribution by her service or gains to the improvement of the land or enhancement of their common property after the land was paid for and title acquired create in her any interest therein.  (Pp. 313, 314.)

Question certified from the Court of Civil Appeals for the Second District in an appeal from Cooke County.

*Stuart & Bell,* for appellant.—On proposition that wife can not acquire title to the husband's land by adverse possession during the continuance of the marriage relations, even where the husband has abandoned the wife without cause: Cervantes v. Cervantes, 76 S. W., 790.

That the possession of appellee in this case has not been adverse to Thomas Jefferson: Mhoon v. Cain, 77 Texas, 318; Schleicher v. Gatlin, 85 Texas, page 272; Keys v. Mason, 44 Texas, 140; Nichols v. Nichols, 79 Texas, 332; Chance v. Branch, 58 Texas, 493; Gillespie v. Jones, 26 Texas, 343; Texas W. Ry. Co. v. Wilson, 83 Texas, 157; Warren v. Frederichs, 83 Texas, 384; Texas & P. Ry. Co. v. Gaines, 27 S. W., 266; Toyaho Creek Irr. Co. v. Hutchins, 21 Texas Civ. App., 274.

That the marriage of appellee and Thomas Jefferson, although assumed under the forms of a regular marriage, was invalid, and conferred on appellee no rights in Thomas Jefferson's property as community property, as such rights, being conferred by statute, depend on a valid marriage: Routh v. Routh, 57 Texas, 589; Chapman v. Chapman, 11 Texas Civ. App., 392.

That the marriage of appellee and Thomas Jefferson, being illegal, and not contracted by appellee in good faith, appellee can not claim any interest in the property acquired by Thomas Jefferson during the pretended marriage between appellee and said Thomas Jefferson: Lawson v. Lawson, 30 Texas Civ. App., 43; Morgan v. Morgan, 1 Texas Civ. App., 315.

The only provision of our law authorizing inheritance of an illegitimate child is article 1700 of our Revised Statutes, giving right of inheritance through the mother or maternal kindred: Lee v. Bolden, 85 S. W., 1027.

Is not the question whether or not appellee, Margreth Williams, would be entitled to one-half of the land in controversy if said land was acquired by the joint efforts of herself and Thomas Jefferson, answered by the decision in Lawson v. Lawson, 30 Texas Civ. App., 43?

*Green & Blanton* and *Potter & Culp,* for appellee.—The fact that the occupant of the land made a mistake as to the title or right by

which it was claimed will not prevent the statute of limitation from running in favor of the occupant, if, in fact, it was claimed and held hostile to the owner: Price v. Eardley, 34 Texas Civ. App., 60; Village Mills Co. v. Manley, 42 Texas Civ. App., 420.

The appellant having placed the appellee in possession of the land for the purpose of continuing his unlawful and immoral relations with her, the law will not lend its aid to dispossess her: 9 Cyc., 546; Hill v. Freeman, 49 Am. Rep., 48; Dent v. Ferguson, 132 U. S., 50; Specht v. Collins, 81 Texas, 215; Seeligson v. Lewis, 65·Texas, 221; West v. Grand Lodge, 14 Texas Civ. App., 471; Beer v. Landman, 88 Texas, 450.

Where a married daughter is left a widow, without any means of support, and returns to the home of her parents to take up her permanent abode again with the family, she becomes a constituent of the family, and may assert homestead rights in the homestead of the family: Lane v. Philips, 69 Texas, 241; Gay v. Halton, 75 Texas, 206; Childress v. Henderson, 76 Texas, 664; Krueger v. Wolf, 12 Texas Civ. App., 167; Drought v. Stallworth, 45 Texas Civ. App., 159; Rutherford v. Mothershed, 42 Texas Civ. App., 360; McDonnell v. Ragsdale, 71 Texas, 26.

The illegitimate children of Thomas Jefferson were entitled, during his life, to be sheltered from the exactions of his creditors on this land as a home: Lane v. Philips, 69 Texas, 241.

The illegitimate children of Thomas Jefferson have the same claims upon his property for support, for shelter and a home, after his death, that they had during his life: Gay v. Halton, 75 Texas, 206.

A married daughter who becomes a widow, and returns to her father's home and takes up her permanent abode with him, and is a constituent of the family at the father's death, is entitled to exemptions. Childress v. Henderson, 76 Texas, 664.

MR. JUSTICE BROWN delivered the opinion of the court.

Certified question from the Court of Civil Appeals of the Second District, as follows:

"The above styled cause is now pending before us on a motion for rehearing. The opinion rendered by us on the original hearing will accompany this certificate, and is made a part of it. The members of this court are agreed upon the ground of reversal upon which the cause was originally reversed, but are not agreed as to the legal sufficiency of the evidence to support appellee Margreth's plea of limitation against the deceased, Thomas Jefferson, or even to authorize the submission of such issue should the evidence be the same on another trial.

"We therefore certify to your honors for decision whether or not (a) the evidence contained in the record, which appears to be undisputed, raises the issue of title by limitations of ten years in favor of appellee Margreth Williams as against the deceased Thomas Jefferson, or (b) if not identical with the above, is the evidence legally sufficient to support a finding in her favor on such issue?

"The opinion referred to will also disclose that we held it to be error in the trial court to exclude evidence tendered by appellee Nettie Maloy, tending to show that she was an unmarried daughter living with the family of the deceased at the time of his death, upon which she based

her claim to the property in controversy as a homestead as a surviving constituent of her father's family. It is insisted on this motion that since Mrs. Maloy, she being a widow, is the illegitimate daughter of Thomas Jefferson and appellee Margreth, and therefore not entitled to inherit from her father, she is also not within the statute (Sayles' Texas Civil Statutes, article 2046) making it the duty of the Probate Court "to set apart, for the use and benefit of the widow and minor children and unmarried daughters remaining with the family of the deceased, the exempt property of the estate." While we understand it to be settled, as contended by appellant in this motion, that where the only surviving constituent of a deceased's family is an unmarried daughter, her rights as such surviving constituent are subordinate to the right of the heirs to a partition of the homestead (White v. Small, 22 Texas Civ. App., 318; 54 S. W., 915, writ refused), and while it appears that the deceased Thomas Jefferson left surviving him no minor children to claim the homestead, we nevertheless yet believe we were correct in our holding, since the question before us was not one involving the rights of the heirs to a partition, but rather, whether or not the appellant, temporary administrator of the estate, would be entitled to recover the homestead as against the rights of a surviving unmarried daughter living with deceased's family at the time of his death. In view of the novelty of the question and of the reversal of the case, we deem it advisable to certify to Your Honors whether or not we erred in this holding.

"It is also earnestly insisted that we erred in holding that, on another trial, if the evidence showed that the property was acquired by money accumulated and earned by the joint efforts of the appellee Margreth and the deceased Thomas, she would be entitled to one-half of the property. It is insisted, though erroneously, we think, that we are in conflict with the decision of the Court of Civil Appeals for the First District in the case of Lawson v. Lawson, 30 Texas Civ. App., 43, wherein a writ was refused by Your Honors, and that that decision is decisive of appellees' rights in the land in controversy. In the Lawson case, as we understand it, Mrs. Lawson's rights were accorded to her upon the express finding that she had innocently entered into the marriage relation with her husband, believing the same to be lawful, and therefore the question of what her property rights would have been had she been cognizant of their illicit relations was not before the court. The contention of appellant in effect is that our holding in this respect is tantamount to an enforcement by the courts of an illegal contract between deceased and appellee Margreth by recognizing her property rights in the property acquired during their joint lives. But we thought, and still think, that this wholesome principle of law is not violated by such holding, inasmuch as her rights under our holding are predicated upon the equitable grounds that her individual funds or earnings entered into the acquisition, and not that her rights are in any sense those of a lawful wife. In other words, that the case would be no different if she were a man, and had contributed funds toward the acquisition of the property taken in the name of another. To accord her such rights appears to us to be in keeping with the dictates of common honesty, and in nowise to involve the enforcement of an illegal contract. The case of Chapman v.

Chapman, 16 Texas Civ. App., 382, cited as authority for the holding in Lawson v. Lawson, *supra,* recognized such a rule and adjusted the property rights of the man and woman with reference to it. But in view of the insistence of counsel, and of the novelty of the question, we also certify to Your Honors whether or not we erred in this last holding."

The Court of Civil Appeals has submitted three questions, which, for convenience, we formulate as follows:

First question: Did the evidence in the record raise the issue of ten years limitation in favor of Margreth Williams against Thomas Jefferson?

Briefly, the evidence bearing upon this question is as follows: In 1859 Thomas Jefferson, being then a married man and living in the State of Pennsylvania, entered into a marriage, in form, with Margreth Williams, who, at the time, knew that Jefferson was a married man, he having a living wife. Subsequently Jefferson and Margreth Williams removed from Pennsylvania to the city of New Orleans, Louisiana, where they remained until 1880, when Jefferson, with Margreth and their children, removed to Cooke County, Texas, and he bought the land in controversy in this suit. The land was deeded to Jefferson for a recited cash consideration, paid at the time. In a short time after the purchase Jefferson, with Margreth and their illegitimate children, moved upon the land, where he remained with them but a few months and then returned to New Orleans. Margreth Williams, with her children, remained upon the land, cultivating same and improving it by building fences, etc., during which time she claimed the land as her own, and claimed to be the wife of Thomas Jefferson. She says that she claimed the land because she was the wife of Thomas Jefferson. Margreth Williams and her children resided upon the land until this suit was brought on the 9th day of September, 1905. Thomas Jefferson returned to the place at intervals, sometimes would be gone for a number of years at a time. On the occasions of his visits he would remain with them but a very short time, when he would return to New Orleans. Thomas Jefferson brought a suit against Margreth Williams for divorce, claiming that she was his wife, but subsequently dismissed that suit. He instituted this suit for the purpose of recovering the land, and during the pendency of it he died. Appellant was appointed temporary administrator and made a party to the suit.

In order for the statute of limitation of ten years to be effective in favor of Margreth Williams it was necessary that she should have claimed the title to the land adversely to Thomas Jefferson, in whom the title was. Her claim to the land as his wife through the deed by which title was conveyed to him was not such adverse possession as would confer a right upon her. We therefore answer that the evidence was not sufficient to raise the issue of limitation in favor of Margreth Williams.

Second question: Was Mrs. Maloy entitled to have the homestead set apart to her as an unmarried daughter of Thomas Jefferson, remaining with his family at his death?

Mrs. Maloy was an illegitimate child of Thomas Jefferson and

Margreth Williams; she was a widow, living with her mother at the time of Thomas Jefferson's death.

Article 16, section 52, of the Constitution, does not secure to the unmarried daughter of the deceased a right to occupy the homestead after her father's death. Mrs. Maloy's right, if she has any, depends upon the construction of the following article of the Revised Statutes:

"Art. 2046. At the first term of the court after an inventory, appraisement and list of claims have been returned, it shall be the duty of the court, by an order entered upon the minutes, to set apart for the use and benefit of the widow and minor children and unmarried daughters remaining with the family of the deceased, all such property of the estate as may be exempt from execution or forced sale by the Constitution and laws of the State, with the exception of any exemption of one year's supply of provisions."

The question propounded depends upon the meaning of the words, "unmarried daughters," as used in the statute. It will be observed that the article last copied mentions the widow and minor children and unmarried daughters remaining with the family as the persons for whose use the homestead may be set aside. It is evident that "widow," as used in that article, refers to the surviving lawful wife of the deceased, and would not embrace Margreth Williams. The "minor children and unmarried daughters" might be the children of the surviving widow, or of a former wife, but they must be the legitimate children of the deceased. The common law governs in regard to the relation of bastards to their fathers and does not recognize any right in the bastard to any interest in the father's estate.

There is some conflict of authority upon the meaning of the word "child," when used in a statute, deed or will, but we are of opinion that the decided weight of authority is in favor of the construction that the use in this statute of the words, "children and unmarried daughters," refers alone to the legitimate children of the deceased. Johnstone v. Taliaferro, 45 L. R. A., 95; Blacklaws v. Milne, 82 Ill., 506, 25 Am. Rep., 339; 176 Pa., 116; 2 Words & Phrases, word "child," 1115.

The first case cited was decided by the Supreme Court of the State of Georgia, in which Chief Justice Cobb reviews with great care the authorities upon this question and reaches the conclusion that "child" in such connection means a legitimate child. We do not deem it necessary to cite other cases upon the question. We therefore answer that Mrs. Maloy was not entitled to the use of the property in suit as a homestead.

Third question: Is Margreth Williams, notwithstanding the invalidity of her marriage, under the facts of this case, entitled to an interest in the property because she contributed to its acquisition?

The record shows that in 1880 the land in suit was conveyed by deed regularly executed to Thomas Jefferson for a recited cash consideration, acknowledged to have been paid by him at the time. Margreth Williams' right in this property is a question of fact to be submitted to the jury under proper instructions. If Margreth Williams can show that the money with which the land was purchased was acquired in whole or in part by her labor in connection with

Thomas Jefferson before the time when the land was purchased, then she would be entitled to a share in the land in the proportion that her labor contributed in producing the purchase money. Nothing which she did contributing to the improvement of the property or otherwise in connection with Thomas Jefferson after the deed was made and the land paid for can affect the title. Her right must have existed in the fund which purchased the land and no trust in favor of Margreth Williams will arise out of the dealings between her and Jefferson after the title had vested in him. Allen v. Allen, 107 S. W., 528; Kinlow v. Kinlow, 72 Texas, 639.

It is not necessary that Margreth Williams should prove that she produced by her labor a part of the very money that was used in purchasing the land. If she and Thomas Jefferson were working together to a common purpose and the proceeds of labor performed by them became the joint property of the two, then she would occupy the position that a man would have occupied in relation to Thomas Jefferson under the same circumstances; each would own the property acquired in proportion to the value of his labor contributed to the acquisition of it. In the statement of the evidence in this case by the court as it is submitted to us there is no mention made of the financial condition of Thomas Jefferson or of Margreth Williams at the time that they united their fortunes unlawfully, nor his financial condition at the time he came to Texas. The source from which the money was derived for the purchase of the land is not made to appear. The legal title was vested in Thomas Jefferson by the deed, and in order to participate in that Margreth Williams must show a state of facts which made Thomas Jefferson a trustee for her benefit and must prove such facts as will enable the jury to say whether or not she contributed anything to the purchase of the land, and, if so, the proportion of her contribution.