SCLAMBERG *v.* SCLAMBERG

[No. 27,674. Filed May 25, 1942.]

*Vitus G. Jones, Francis Jones, Roland Obenchain,* and *Paul M. Butler,* all of South Bend, for appellant.

*George A. Crane* and *Samuel Schulman,* both of South Bend, for appellee.

SHAKE, C. J.—The trial court found the following facts specially. In 1929 the appellant, a Russian by birth, a naturalized citizen of the United States, and a resident of Indiana returned to his native land for a visit. While there, he married his niece—the daughter of his sister—agreeably to the laws of the Union of Socialist Soviet Republics. He was then forty years of age and she was twenty-seven. Shortly afterwards, the appellant brought the appellee to South Bend in this State where they lived together as husband and wife until 1940, they becoming, in the meanwhile, the parents of two children. At the time of the alleged marriage the appellant had property of the value of $40,750 and owed $23,000. When they separated, he

had assets amounting to $21,750 and liabilities of $5,550. During the time the parties lived together the appellee devoted herself to the usual duties of a housewife, was economical, and aided and assisted the appellant in reducing his indebtedness $17,450 for which she received no compensation. The court further found that "The plaintiff is entitled to receive out of the property of the defendant the sum of One Thousand Dollars ($1,000.00)."

The conclusions of law were to the effect: (1) that the parties were not husband and wife; (2) that their children were legitimate; and (3) that the appellee ought to obtain judgment for $1,000 payable out of the defendant's property.

The appellant contends that the purported finding that appellee was entitled to $1,000 was a conclusion of law and that the facts properly found were insufficient for the reason that it was impossible to arrive at the amount named by any mathematical process. We do not agree that the finding complained of was a conclusion of law but regard it rather as an ultimate fact; nor do we share the view that it was unwarranted on account of the preceding findings. While the appellant's net worth was slightly less at the time of the separation than it was when the alleged marriage took place, his indebtedness was greatly decreased and his financial situation much improved through the appellee's efforts. This court does not choose to go on record as holding that a woman who lived with a man for eleven years, economically managed his household, bore him two children, and assisted him in reducing his debts by more than $17,000 during a period of depression, did not contribute anything toward the accumulation of the net estate of $16,200 which he possessed at the end of that period. Applying

the old adage that a dollar saved is a dollar earned, we cannot escape the conviction that the facts found disclose that the appellee made a substantial contribution to the appellant. Since her demand was unliquidated, it was the problem of the trial court to determine the amount of recovery. Evidently realizing that it is sometimes difficult to distinguish between an ultimate fact and a conclusion of law, the presiding judge quite prudently protected his record by placing appropriate language under both headings. It cannot be said that the conclusion of law of which complaint is made had no factual foundation.

The parties agree that their purported marriage was properly held to be void and that as a consequence the court was powerless to decree a divorce or award alimony. The question is then whether a court of equity may, on the facts found, grant the appellee any relief. It is the appellant's theory that, since the marriage was forbidden by the positive terms of § 44-103, Burns' 1933, § 5620, Baldwin's 1934, and the cohabitation of the parties pursuant thereto was incestuous by reason of § 10-4206, Burns' 1933, § 2577, Baldwin's 1934, the law will leave them where it found them. He says that redress is uniformly denied in such cases except in those jurisdictions which recognize the doctrine of community property historically based on the French, Spanish, or Mexican law, and he reasons that since our system of jurisprudence is derived from the law of England we should likewise deny recovery.

The appellant has apparently overlooked the very significant fact that the Roman civil law is the source of much of English and American equitable jurisprudence and likewise of the doctrine of community prop-

erty recognized in certain of our southern and western states. 30 C. J. S. Equity § 4. 11 A. L. R. 1394.

In § 55 of the fifth edition of Pomeroy's Treatise on Equity Jurisprudence it is said:

> "There can be no doubt that they (the early chancellors) took their conception of equity from the general description of it given by the Roman jurists, *understood and interpreted, however, according to their own theory of morality as a Divine law,* and also borrowed many of the particular rules by which this equity was applied from the Roman law."

In the preface to the first edition of this text Professor Pomeroy said:

> "It is true that the fundamental principles (of the law of equity) are the same as those which were developed through the past centuries by the English chancery; but the application of these principles, and the particular rules which have been deduced from them, have been shaped and determined by the modern American national life, and have received the impress of the American national character."

The cases bearing on the subject now under inquiry are collected in 11 A. L. R. 1394 and the annotator makes the following observation at page 1398:

> "If equity is privileged to apply civil-law rules where the common law is unable to give an adequate remedy, no reason is given why the principle of those cases should not be generally adopted, and the woman given the benefit of a rule which certainly works equity in the premises, and prevents the infliction of a gross wrong."

We see no sound reason, therefore, why we may not avail ourselves of the precedents to be found in the reported opinions of the courts of the land that have had occasion to consider the problem now before us.

In *Krauter* v. *Krauter* (1920), 79 Okla. 30, 31, 32, 190 P. 1088, 1089, 1090, the court held that a pretended marriage entered into between first cousins was incestuous and void under the law of that state. Considering the rights of the woman, the court propounded unto itself the following question:

"Can it be said, under such conditions, that the defendant in error shall be turned out and receive no benefits from her 15 years of work and the accumulations thereof, and her pretended husband, although a party to the void marriage, reap all the benefits from their joint accumulations, and not only retain the fruits of his labor, but her accumulations also free from any right or claim of the plaintiff?"

■ The court's conclusion was summed up as follows:

"Both parties were in a court of equity asking a court of equity to determine their property rights, and the court had a right to deal with the parties and their property as he found them. The court found that the joint accumulations of these parties consisted of property of the value of some $16,000. The court could not put the parties back in statu quo, or in the position they were when they first entered into the void marriage. What, as a matter of right and equity, would become of this property that was jointly accumulated by the parties? Would a court of equity decree it to be the property of one to the exclusion of the other? We do not think so; and, while it may be true that the relation between the parties could not strictly be termed a partnership, yet it might be termed a quasi partnership, and the different courts have dealt with the situation on the theory that the relation of the parties created a quasi partnership. We think it is immaterial whether it is called a quasi partnership or not, but the facts bring the case squarely within the rule that a court of equity has the inherent power, where the parties appear in said court, and the court has jurisdiction of both the parties and their property, to adjudge the marriage void and settle their prop-

erty rights acquired during the existence of the marriage relation and make an equitable division thereof."

Among other cases to the same effect are *Werner* v. *Werner* (1898), 59 Kans. 399, 53 P. 127, 68 Am. St. Rep. 372, 41 L. R. A. 349. *Schneider* v. *Schneider* (1920), 183 Cal. 335, 191 P. 533, 11 A. L. R. 1386. *Knoll* v. *Knoll* (1918), 104 Wash. 110, 176 P. 22, 11 A. L. R. 1391. *Hayworth* v. *Williams* (1909), 102 Tex. 308, 116 S. W. 43, 132 Am. St. Rep. 879.

We are of the opinion the case was of equitable cognizance and that the trial court's conclusions of law were proper.

The judgment is affirmed.

NOTE.—Reported in 41 N. E. (2d) 801.