[L. A. No. 18263. In Bank. Mar. 1, 1943.]

MARIAN VALLERA, Respondent, v. CONCEZIO VALLERA, Appellant.

682

Zagon & Aaron, S. S. Zagon and L. B. Minter for Appellant.

William Ellis Lady for Respondent.

TRAYNOR, J.—Plaintiff brought this action for separate maintenance and for a division of community property, which she alleged was worth at least $60,000. She relied on an alleged common law marriage contracted in Michigan on December 16, 1938, and accused defendant of extreme cruelty, desertion, and adultery. Defendant denied the allegations of the complaint and alleged that his relations with plaintiff were illicit and that he was legally married to Lido Cappello, named as co-respondent in the complaint. The trial court found that plaintiff and defendant did not on December 16, 1938, or at any other time contract a common law marriage

in Michigan or elsewhere; that they did not at any time enter into or attempt to enter into an agreement to take each other as husband and wife; that beginning in May, 1936, and for at least three years thereafter, plaintiff cohabited meretriciously with defendant; that between January, 1933, and December 15, 1938, defendant was married to Ethel Chippo Vallera; that plaintiff knew from the beginning of her relationship with defendant that he was married and under a legal disability to enter into a marriage contract with her; that while the marriage between defendant and Ethel Chippo Vallera was dissolved on December 15, 1938, neither plaintiff nor defendant learned of its dissolution until November, 1939; and that on July 6, 1940, defendant entered into a valid marriage with Lido Cappello. The court concluded that plaintiff and defendant had never been husband and wife; that plaintiff was not entitled to maintenance; and that there was no community property. It held, however, that all property acquired by the parties between December 16, 1938, and July 6, 1940, except such property as either might have acquired by gift, devise, bequest, or descent, was held by them as tenants in common, each owning an undivided one-half thereof, and defendant has appealed from this part of the judgment. He contends that since there was no marriage, no attempt to contract marriage, no belief in the existence of a valid marriage, no evidence of any agreement between the parties as to their property rights, and no evidence concerning the accumulation of property or contributions by the parties thereto, plaintiff could not acquire the rights of a cotenant in property acquired by him during the period of illicit cohabitation.

It is well settled that a woman who lives with a man as his wife in the belief that a valid marriage exists, is entitled upon termination of their relationship to share in the property acquired by them during its existence. (*Feig* v. *Bank of Italy etc. Assn.*, 218 Cal. 54 [21 P.2d 421]; *Figoni* v. *Figoni*, 211 Cal. 354 [295 P. 339]; *Schneider* v. *Schneider*, 183 Cal. 335 [191 P. 533, 11 A.L.R. 1386]; *Coats* v. *Coats*, 160 Cal. 671 [118 P. 441, 36 L.R.A. N.S. 844]; see 11 A.L.R. 1394.) The proportionate contribution of each party to the property is immaterial in this state (*Coats* v. *Coats, supra; Macchi* v. *La Rocca*, 54 Cal.App. 98 [201 P. 143]), for the property is divided as community property would be upon

684

the dissolution of a valid marriage. (*Sanguinetti* v. *Sanguinetti*, 9 Cal.2d 95 [69 P.2d 845, 111 A.L.R. 342]; *Feig* v. *Bank of America etc. Assn.*, 5 Cal.2d 266 [54 P.2d 3]; *Schneider* v. *Schneider, supra; Coats* v. *Coats, supra; Macchi* v. *LaRocca, supra.*)

 The essential basis of a putative marriage, however, is a belief in the existence of a valid marriage. (*Flanagan* v. *Capital Nat. Bank*, 213 Cal. 664 [3 P.2d 307]; see Evans, *Property Interests Arising from Quasi-Marital Relations*, 9 Corn.L.Q. 246; 20 Cal.L.Rev. 453.) In addition, in the majority of cases, the de facto wife attempted to meet the requisites of a valid marriage, and the marriage proved invalid only because of some essential fact of which she was unaware, such as the earlier undissolved marriage of one of the parties (*Schneider* v. *Schneider, supra; Knoll* v. *Knoll*, 104 Wash. 110 [176 P. 22, 11 A.L.R. 1391]), a consanguineous relation between the parties (*Figoni* v. *Figoni, supra; Krauter* v. *Krauter*, 79 Okla. 30 [190 P. 1088]), or the failure to meet the requirement of solemnization. (*Santos* v. *Santos*, 32 Cal. App.2d 62 [89 P.2d 164]; *Macchi* v. *La Rocca, supra;* see| *Fung Dai Kim Ah Leong* v. *Lau Ah Leong*, 27 F.2d 582.)

Although it is clear from the trial court's findings that the parties in the present case did not comply with the requisites of a legal marriage, plaintiff contends that the presumption that a person is innocent of crime or wrong (Code Civ. Proc. § 1963, subd. 1), and the fact that the parties lived together as man and wife at a time when both were free to enter into a valid marriage with one another, establishes that plaintiff believed in good faith that she was the lawful wife of defendant. The findings of the trial court, however, amply supported by the evidence, do not substantiate the existence of good faith. (See *Flanagan* v. *Capital Nat. Bank, supra.*) The removal of the barrier to a valid marriage between the parties by the dissolution of defendant's marriage to Ethel .Chippo Vallera does not substantiate plaintiff's good faith, for the court found that neither plaintiff nor defendant was aware of that dissolution. The controversy is thus reduced to the question whether a woman living with a man as his wife but with no genuine belief that she is legally married to him acquires by reason of cohabitation alone the rights of a co-tenant in his earnings and accumulations during the period of their relationship. It has already been answered in

the negative. (*Flanagan* v. *Capital Nat. Bank,* 213 Cal. 664 [3 P.2d 307].) Equitable considerations arising from the reasonable expectation of the continuation of benefits attending the status of marriage entered into in good faith are not present in such a case.

Plaintiff's lack of good faith in alleging the belief that she had entered into a valid marriage would not, however, preclude her from recovering property to which she would otherwise be entitled. If a man and woman live together as husband and wife under an agreement to pool their earnings and share equally in their joint accumulations, equity will protect the interests of each in such property. (*Bacon* v. *Bacon,* 21 Cal.App.2d 540 [69 P.2d 884] ; *Mitchell* v. *Fish,* 97 Ark. 444 [134 P. 940, 36 L.R.A. N.S. 838] ; see *Feig* v. *Bank of America etc. Assn., supra; Bracken* v. *Bracken,* 52 S.D. 252, 256 [217 N.W. 192] ; *Hayworth* v. *Williams,* 102 Tex. 308 [116 S.W. 43, 132 Am.St.Rep. 879].) Even in the absence of an express agreement to that effect, the woman would be entitled to share in the property jointly accumulated, in the proportion that her funds contributed toward its acquisition. (*Hayworth* v. *Williams, supra; Delamour* v. *Roger,* 7 La.Ann. 152.) There is no evidence that the parties in the present case made any agreement concerning their property or property rights. The meager evidence with respect to the accumulation of the alleged community property can support only the inference that the property consisted of defendant's earnings during the period in question, and there is no contention to the contrary. There is thus no support in the record for the trial court's finding that the parties each owned an undivided one-half of the property acquired by either of them between December 16, 1938, and July 5, 1940.

There is no merit in plaintiff's contention that defendant is not in a position to challenge the trial court's ruling because he stands convicted in the District Court of the United States of falsely representing himself to be an American citizen.

The part of the judgment appealed from is reversed.

Gibson, C. J., Shenk, J., and Edmonds, J., concurred.

CURTIS, J.—I dissent. I agree with the conclusion of the majority opinion in holding that the judgment of the trial

court cannot be sustained upon the ground that (1) there was a valid marriage, (2) an attempt to contract a valid marriage, (3) a bona fide belief in the existence of a valid marriage, or (4) an express agreement of the parties as to their property rights. I disagree with the conclusion of the majority opinion that in order to sustain the judgment of the trial court there must be proof of a definite monetary contribution by the plaintiff in the form of separate property, or a contribution of her earnings as a waitress or from other employment outside the home. In the absence of any proof of any cash or property contribution by the plaintiff, the holding of the trial court that she owned a one-half interest in the property accumulated must have been based upon the conclusion that the value of her services as a housekeeper, cook, and homemaker was of sufficient value to warrant an equal division of the property. The majority opinion substitutes its own appraisal of the value of her services in the home as being of no more value than the cost of maintenance of herself and her two children. The holding of the trial court seems to me more reasonable.

The existence of the illicit relationship even knowingly entered into, is no bar *per se* to an equitable division of the property. This is demonstrated by the cases cited in the majority opinion which hold that if there is an express agreement to pool property, or if the woman's earnings contribute to its purchase, the existence of the illicit relationship, even knowingly entered into, does not bar an equitable division of the property. This state has determined as part of its fundamental public policy that a wife has a one-half interest in marital property. The same rule, by analogy, is applied where the parties enter into an illicit relationship but think, in good faith, they are married. The next step was taken in those cases which hold that express agreements to share equally in joint accumulations will be enforced, and the court will protect the interest of both where both contribute toward the purchase of the property even though they both knew the relation was illicit. Likewise, if an express agreement will be enforced, there is no legal or just reason why an implied agreement to share the property cannot be enforced. Unless it can be argued that a woman's services as cook, housekeeper, and homemaker are valueless, it would seem logical that if, when she contributes money to the purchase of property, her interest will be protected, then when she contributes her services

in the home, her interest in property accumulated should be protected. Just because the man, who in the instant case was equally guilty, earned the money to buy the property, should not bar the woman from any rights at all in the property, although her services made the acquisition possible. Such a rule gives all the advantages to be gained from such a relationship to the man with no burdens.

The majority opinion concedes that in determining the value of a woman's services in maintaining a home the courts have held, in instances involving the absence of a valid marriage but the existence of a bona fide belief in the existence of a marriage, that upon the termination of the relation, the property will be divided as community property would be upon the dissolution of a valid marriage and that the proportionate contribution of each party to the purchase of the property is immaterial. (*Macchi* v. *La Rocca,* 54 Cal.App. 98 [201 P. 143].) Unless the underlying purpose be to punish the woman for participating in the illicit relationship—which idea of punishment obviously has no just place in a controversy between two parties equally guilty—why should not the same rule be applied to the instant case?

It should perhaps be noted that the trial court limited the recovery by the plaintiff to a half-interest in the property acquired during the period the parties cohabited subsequent to the divorce of the first wife and prior to defendant's marriage to his second wife, hence no equities of third parties intervene, and the only question involved is that of the equities between the parties. To permit the defendant to retain the entire fruits of their joint efforts is contrary to the dictates of simple justice.

Carter, J., and Peters, J. pro tem., concurred.

Respondent's petition for a rehearing was denied March 29, 1943. Curtis, J., and Carter, J., voted for a hearing.