[Civ. No. 15011.   Second Dist., Div. One.   Mar. 8, 1946.]

MARIAN VALLERA, Appellant, v. CONCEZIO VALLERA, Respondent.

William Ellis Lady for Appellant.

Zagon, Aaron & Sandler and Robert Kingsley for Respondent.

YORK, P. J.—The instant appeal grows out of litigation extending over a period of years: The plaintiff, relying on a common law marriage contracted between herself and the defendant in Michigan on December 16, 1938, brought an action on July 17, 1940, for separate maintenance and for a division of community property which she alleged was worth $60,000. In that action the trial court found against the ex-

istence of a common law marriage and that for at least three years after May, 1936, the relation between the parties was meretricious; that between January 30, 1933, and December 15, 1938, defendant was married to Ethel Chippo Vallera; that plaintiff knew from the beginning of her relations with defendant that he was married and under legal disability to enter into a marriage contract with her; also, that while the marriage between defendant and Ethel Chippo Vallera was dissolved on December 15, 1938, neither plaintiff nor defendant learned thereof until November, 1939; that on July 6, 1940, defendant entered into a valid marriage with Lido Cappello, who was named in the complaint as corespondent. The court concluded that plaintiff and defendant had never been husband and wife and that plaintiff was not entitled to maintenance. It was adjudged and decreed that there was no community property and that "all property acquired by plaintiff and defendant herein since December 16, 1938, and prior to July 6, 1940, is held by plaintiff and defendant as tenants in common, each owning an undivided one-half thereof, save and except such property as either may have acquired by gift, devise, bequest or descent."

In passing upon an appeal by defendant from the above quoted portion of the judgment, the Supreme Court in *Vallera* v. *Vallera*, 21 Cal.2d 681, 684 [134 P.2d 761], held that "a woman living with a man as his wife but with no genuine belief that she is legally married to him," does not acquire "by reason of cohabitation alone, the right of a cotenant in his earnings and accumulations during the period of their relationship"; and reversed that portion of the judgment from which said appeal was prosecuted. However, said court in the cited case made the following statement (p. 685) : "Plaintiff's lack of good faith in alleging the belief that she had entered into a valid marriage would not, however, preclude her from recovering property to which she would otherwise be entitled. If a man and woman live together as husband and wife under an agreement to pool their earnings and share equally in their joint accumulations, equity will protect the interests of each in such property."

Thereafter, relying upon such language, appellant filed in the superior court a notice of motion for leave to file a proposed amended complaint, which complaint alleged an agreement between the parties not only "to enter into a marriage with each other and become husband and wife, but they agreed

to live together as husband and wife and to pool their earnings and share equally in their joint accumulations''; and that pursuant to their joint efforts they accumulated property totaling in value between $75,000 and $100,000. Plaintiff prayed for an accounting of the joint earnings and for an award of one-half thereof. Said court made and entered its order granting the motion and authorizing the filing of the proffered complaint. Upon appeal by the defendant from that order, this court sustained the trial court and dismissed the appeal on the ground that the order from which it was taken was non-appealable. (*Vallera* v. *Vallera*, 64 Cal.App.2d 266, 272 [148 P.2d 694].)

Thereafter, on August 14, 1944, the cause went to trial upon plaintiff's second amended complaint for an accounting and for other relief, and the answer thereto. From the judgment that plaintiff take nothing by said complaint, this appeal is prosecuted.

The only issue presented for determination at the instant trial was the truth or falsity of appellant's allegation in her second amended complaint that shortly after the parties became acquainted in April, 1936, ''they orally agreed to live together as husband and wife and to pool their earnings and share equally in their joint accumulations.''

In an attempt to prove that such an agreement existed, appellant testified that while she, her two children and respondent were residing together on El Centro Avenue in Los Angeles in April of 1939, she had a conversation with respondent concerning placing the children in school under the name of Vallera, at which time respondent stated that ''we would start all over again and put the children in school, establish a home, and do the best we can on what moneys we accumulated, or whatever we had accomplished. We would save and have something when we got older, and put the children through school and give them the proper education, which we did so.'' In answer to the question, ''Did you work during the time that you were at the El Centro place?'' (between early in April and the latter part of November, 1939), appellant stated: ''I worked for the United Artists' Studios, and I worked for Joe (respondent) until he went in partnership with Mr. Nickoloff, and he told me to stay home''; that she helped him out at the store when respondent was short a cashier and that she also acted as hostess when he had to be away; that she ran the household and he ran the business, i. e.,

the Italian Kitchens, and when she substituted for someone at the store, he did not pay her, but said, "it was as much mine as it was his, and I should look after it as though it was my own, with full interest." Appellant also testified that the expense of maintaining the home came from the business; that "We worked and established a home, and he said what money we had, what money we accumulate, the things we accumulate, put it together so we would have something when we got older, and give the children a proper education. . . . I said, 'I will do it.' " That thereafter, "We saved what we could . . . and bought an automobile, and the things we needed, food, clothing, and paid the necessary bills."

For the purpose of attacking her credibility, appellant was impeached on cross-examination by evidence that at the former trial of this action and at the hearing on an order to show cause *in re* attorney's fees and allowance for support, she had made statements which were inconsistent with her testimony at the instant trial.

Respondent denied having made either in substance or effect any of the statements attributed to him by appellant with respect to any agreement to pool their earnings and share in the accumulation thereof, and testified that he heard of such agreement for the first time at the trial herein. Respondent further testified that he married Lido Cappello in June of 1940, and that shortly thereafter he received a letter from appellant, a portion of which read as follows: "Joe, I don't like to do this now that you are married. I don't want to cause you any trouble, but if you will be so kind and let me have a few dollars, please, I will appreciate it very much. What money I had, I spent it looking for work. I am working but it isn't so good. Please help me until I get started. Then I will not bother you any more. I will leave you alone, for I do want you to be happy, believe me, Joe, please."

At the conclusion of the trial, the court, in deciding against appellant, commented as follows: "I do not find that at any time the plaintiff gave any money to the defendant, or that they pooled any money, nor was there any joint account in any bank, and I have traced it carefully so far as their arrival in California is concerned, and the amount of money that they had. If he has been prosperous since 1940, that is no concern of this Court. That is a situation the Court cannot control. I cannot find any dollars and cents for your client (the plaintiff)."

■ In connection with her contention that the evidence presented does not support the judgment, appellant urges that ''Any agreement of the kind and character mentioned by the Supreme Court in its majority opinion in this matter (*Vallera* v. *Vallera*, 21 Cal.2d 681, 685 [134 P.2d 761]) . . . is and must be implied from the facts as shown by the record notwithstanding the *ipsi dixit* of the defendant that he did not enter into or intend to enter into any such agreement or arrangement.''

From an examination of the reporter's transcript, it becomes readily apparent that the evidence produced by appellant falls far short of proving the agreement claimed by her. Her testimony to the effect that she and respondent were jointly to support her children, the issue of an illicit association with another man, were to give them a proper education, and that respondent permitted her and the children the use of his name while they were living together, is insufficient upon which to base an inference that she and respondent agreed to pool their earnings and that she herself was to share in respondent's savings. Moreover, the letter which appellant wrote to respondent after they had separated, hereinabove quoted, negatives any implication that respondent agreed to share with appellant accumulations resulting from his business ventures. The judgment rendered by the trial court is supported by substantial evidence.

■ Appellant makes the point that the court erred in refusing to continue the trial until the deposition of respondent could be taken. It is well settled that the granting or refusal of a continuance is a matter in the discretion of the trial court. ■ In the instant cause, no prejudice resulted to appellant by the denial of a continuance, for the reason that respondent was present at the trial and was examined by her under section 2055 of the Code of Civil Procedure.

■ Appellant also urges that the court erred in refusing to require respondent to produce the documents described in the subpoena duces tecum served upon him, i. e., records of the Italian Kitchen Corporation. Since the court found against appellant on the basic issue of the existence of the agreement, it necessarily followed that she had no right to the corporate stock and hence no possible concern with the operation of the corporation itself.

■ Appellant complains of the court's failure to make specific findings of fact as to all the allegations contained in

the second amended complaint. The court made its findings with respect to the basic issue,—the agreement, and also expressly found "That, except as herein expressly found to the contrary, all of the allegations of the second amended complaint herein are untrue."

The court properly denied appellant permission to testify as to the contents of a letter received by her from respondent after his arrival in Los Angeles from Detroit, which letter she claimed had been destroyed. Appellant made no offer of proof from which the court could determine the contents of the letter in question, and no suggestion was offered that the letter referred in any manner to the alleged agreement between the parties. Manifestly, it did not make such reference, because the agreement was expressly alleged to have been *oral*.

An examination of the reporter's transcript containing five hundred seventy-six pages reveals that the trial herein was conducted in a fair and impartial manner and was free from prejudicial error.

For the reasons stated, the judgment is affirmed.

Doran, J., and White, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 6, 1946. Carter, J., voted for a hearing.