[Civ. No. 5245.   Fourth Dist.   Nov. 9, 1956.]

MARJORIE A. SUTTON, Appellant, v. DOREN G. SUTTON, Respondent.

Rex Estudillo for Appellant.

L. Donald St. Clair for Respondent.

BARNARD, P. J.—The plaintiff brought this action for divorce on August 6, 1954. The complaint alleged that the parties were married in Tijuana, Mexico, on August 9, 1952, and separated on July 3, 1954; that there is community property consisting of a house and lot in Mira Loma (Riverside County) the title being held by them in joint tenancy; and that there are no children of the marriage. The defendant filed an answer denying the allegations of the complaint and alleging that the parties never went through a marriage ceremony at any time or place, and that they are not and never have been husband and wife. He also filed a cross-complaint alleging that on or about August 8 or 9, 1952, the parties went through an alleged marriage ceremony at Tijuana, and that the application for such a marriage was not submitted to

the proper officials, or signed or certified by such officials, as required by Mexican law. In one cause of action he alleged that on May 5, 1952, the plaintiff sold this lot in Mira Loma to him for $575 by an oral contract; that he paid $205 on May 20 and $370 on June 14, 1952, as provided in the oral contract; that she told him she had conveyed the property to him, which he believed; that when served with divorce proceedings on August 6, 1954, he checked at the recorder's office and learned that instead of deeding the property to him she had deeded it to herself and to him as joint tenants; and that while in possession of the lot, under said contract, he erected a building thereon of the value of $4,500. In another cause of action he alleged that on July 3, 1954, the plaintiff told him that she had been living with another man for several months. He prayed that the marriage be declared null and void, for a divorce, and that the defendant be required to convey the real property to him. No evidence was received on either request for a divorce, since the court first held that a legal marriage had not been established.

The court found that these parties never went through any marriage ceremony at any time or place, that they are not and never have been husband and wife, and that the plaintiff is not and never has been the putative wife of the defendant. The court also found that on or about May 5, 1952, the plaintiff sold this real property to the defendant for $575 by an oral contract and agreed to convey the property to him by grant deed upon his payment of the purchase price; that this was the fair value of the property; that the defendant paid this consideration to the plaintiff and she delivered possession of the property to him; that she told him she had conveyed the property to him, and he believed her; that he first learned on August 6, 1954, that she had not done so but instead had deeded it to them both as joint tenants; that while in possession under said contract the defendant, with the knowledge of plaintiff, erected a building worth $4,500 on said premises; that defendant has fully performed said contract, and plaintiff has refused to give him a grant deed in accordance therewith; and that plaintiff was now in possession of the property, under permission given by the defendant. Judgment was entered denying a divorce "as no marriage exists"; decreeing that the defendant is the sole and legal owner of this real property; ordering the plaintiff to surrender possession and to convey the premises to the defendant; and ordering that the parties bear their respective costs.

A motion for a new trial was made and denied, and the plaintiff has appealed from the judgment.

It is first contended that the court erred in finding that these parties never went through any marriage ceremony and that plaintiff is not the putative wife of the defendant. While it is not and could not well be contended that a valid marriage was shown by the evidence, it is argued that the evidence was sufficient to establish a putative marriage, and that the plaintiff is therefore entitled to share in the property in question, under the principles established by such cases as *Estate of Foy,* 109 Cal.App.2d 329 [240 P.2d 685] ; *Vallera* v. *Vallera,* 21 Cal.2d 681 [134 P.2d 761] ; *Sancha* v. *Arnold,* 114 Cal. App.2d 772 [251 P.2d 67, 252 P.2d 55] ; *Santos* v. *Santos,* 32 Cal.App.2d 62 [89 P.2d 164] ; *Bacon* v. *Bacon,* 21 Cal.App. 2d 540 [69 P.2d 884] ; and *Partrick* v. *Partrick,* 112 Cal.App. 2d 107 [245 P.2d 704]. The real basis for the holding in such cases is that the woman honestly believed that a valid marriage existed; that the marriage later proved to be invalid because of some essential fact of which she was unaware; that in good faith she had helped to accumulate the property in question, usually over many years; and that she was entitled, in equity and justice, to share in the proceeds of the joint efforts of the parties.

This defendant was employed by a corporation doing heavy construction work in the Middle East. He and the plaintiff lived together at times during 1951, and prior thereto, when he was in this country. A deed was recorded on July 14, 1952, conveying the Mira Loma property from the plaintiff to herself and to him, as joint tenants. He started to build a house on the property in June, 1952, and the house was completed in September. The defendant went overseas on November 13, 1952, and returned in June, 1954. During that absence he addressed letters to the plaintiff as his wife in which he talked about additions to the house he planned to make for her comfort when he returned. He had also addressed letters to her as his wife in 1951. He also made an allotment through which his bank sent the plaintiff $100 a month which was later increased to $200 a month. She thus received $2,500 during that period, the last payment being made on June 1, 1954. The defendant left the plaintiff very shortly after he returned in June, 1954.

As the appellant admits, the remaining facts in this case "are highly controverted." The appellant testified that they went to the house in Mira Loma a day or two after August 9,

1952, living in one room and eating elsewhere; that they remained there until he left for overseas in November; and that she assisted in the construction of the house by picking out the paint and doing some work. There was evidence that the defendant lived elsewhere during most of that period, and that the plaintiff was not there except for an occasional day or two until sometime in October. About the middle of October they had a "Thanksgiving dinner" in the house, the occasion being celebrated in advance because the defendant and his nephew expected to leave soon to go "overseas."

The plaintiff introduced three documents in evidence which were admitted as exhibits. One of these is a power of attorney signed by her and having on it what is said to be her fingerprint. It purports to appoint a lawyer, other than the one she claims they saw in Tijuana, to represent her in the courts of the state of Morelos, in Mexico, and to file a marriage contract with this defendant. A similar document is signed by the defendant, with his purported finger mark. These documents are not dated nor witnessed, and are not acknowledged or certified to before or by any notary public or other official. The other document is an application for a marriage certificate dated August 9, 1952, and signed by both parties. The plaintiff testified that they received no papers when they went to Tijuana except a receipt from the attorney for his fees; that this man told her that they were married; and that she received these three documents by mail a week or two later. She did not claim to have shown these documents or any other document to the defendant. The defendant testified that he and the plaintiff went to Tijuana during the last part of July or the first part of August, but did not go to the office of any attorney or notary public, or any place called "Legal Affairs"; that he signed a power of attorney at one time but did not sign it in Tijuana; that he did not pay any money to anybody in Tijuana for any proxy marriage with plaintiff, and had not seen the receipt she offered in evidence; and that he had no knowledge of any marriage certificate being issued to him from Mexico.

The evidence is not sufficient to compel a finding or holding in plaintiff's favor on the putative marriage theory. While she testified, in response to a leading question from her counsel, that she believed all the time that a valid marriage existed, this appears doubtful in view of all the evidence. The documents she received shortly after August 8 did not purport to show that any marriage had taken place, by proxy

or otherwise, and were incomplete on their face. She did not change her position in reliance on a purported marriage, and continued to live with the defendant only at intervals, as she had done for several years prior to August, 1952. While she testified that after that date they lived together for some three months, there is other evidence indicating that after that date they did not live together except for possibly two or three weeks. There is no evidence that she helped to accumulate any property, or that any of defendant's earnings after August 8 went into the Mira Loma property which she claims was actually community property. That property was acquired before August 8, 1952. Checks in evidence show that the defendant put about $4,100 into it, including the lot, before that date, and there is no evidence that anything he earned thereafter was used in building the house.

From an equitable standpoint, it would seem that the plaintiff was amply compensated for any service she claims to have performed by the $2,500 she admittedly received, and the use of the house for several years. On deciding the case the court remarked that the evidence was conflicting and he did not believe all of the evidence offered by either of the parties; that their conduct after the claimed marriage remained the same as it was before; that the plaintiff had benefited materially from defendant's generosity over a long period of time; and that he had given her much of the money which she claimed to have expended. The question was one of fact for the trial court, and in view of all of the evidence it cannot be held that the court was compelled to find, on the putative marriage theory, that the plaintiff was entitled to a division of this property.

It is next contended that the court erred "in refusing to admit the marriage certificate." On the first day of the trial there was some talk about a purported marriage certificate, but there is nothing in the record as to what it contained. Apparently, counsel for plaintiff agreed with the court's view that some document there was not sufficiently authenticated to be admitted or to show any connection with the defendant. The court asked counsel if he had received a certain document, and counsel said he had not, that he had "sent for the actual certificate of marriage," that he had requested that it be air mailed back as fast as possible, and that he had wired for a copy "of the original marriage certificate on file." The court pointed out that he had continued the matter for more than two months to enable the papers to be obtained, stated that

the document could be later presented, on a motion for a new trial if necessary, and then adjourned the hearing for five days. The only other thing that appears in the record is that shortly before the conclusion of the trial, fifteen days later, the court asked counsel for the plaintiff if he desired to offer any other evidence to show the legality of the marriage. Counsel replied that the only thing they had was the certificate which was previously presented, and the court replied that in view of the evidence the offer would be denied. No prejudicial error appears in this connection.

It is next contended that the court erred in "decreeing specific performance" of the alleged oral contract to sell and convey the Mira Loma property. It is argued that the court found that this contract was made on or about May 5, 1952, whereas the evidence shows that the defendant did not get back to California until May 20; that the evidence does not show that any particular type of deed was discussed by the parties; that there was evidence that the parties had discussed building a home together long before May 5, 1952, and the only logical inference is that they intended a deed which would contain both of their names as joint tenants; and that the evidence does not show a sufficient part performance to take the contract out of the statute of frauds. There is no merit to these contentions. The evidence supports the findings as to the making of this contract, that it was fully performed by the defendant, that the plaintiff told the defendant that she had deeded the property to him, and that he did not learn that the deed was a joint tenancy deed to both parties until after this action was filed. Even the plaintiff admitted on the stand that the defendant had paid the $575.

The further contentions that there is no evidence to support the finding that the defendant paid the consideration for this lot and that the plaintiff delivered possession to him, and that the court failed to find on certain material issues raised in the defendant's cross-complaint are likewise without merit. There was ample evidence to sustain the finding complained of, and no finding was necessary on the other matters in view of the court's other findings to the effect that no marriage ever existed and that the plaintiff was not the putative wife of the defendant. The latter finding would include the implied finding that the plaintiff had not believed in good faith that a valid marriage existed.

The judgment is affirmed.

Griffin, J., and Mussell, J., concurred.